**John Paul COTTON, a/k/a John Paul Haney, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–83–320.**

Court of Criminal Appeals of Oklahoma.

April 4, 1984.

Paul D. Brunton, Tulsa, for appellant.

Michael C. Turpen, Atty. Gen., Thomas L. Spencer, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Presiding Judge:

John Paul Cotton was convicted of Possession of Marijuana With Intent to Distribute, After Former Conviction of a Felony, and Possession of Alcoholic Beverage With Intent to Sell Without a License, Second Offense, in Tulsa County District Court Case No. CRF–82–4180. He was sentenced to thirteen (13) years in prison on the marijuana charge, and a Seven Hundred and Fifty Dollar ($750.00) fine on the liquor charge. On appeal, we affirm.

### I.

We will first address appellant's contention that the evidence was insufficient to support the verdict. Appellant challenges the denial of his demurrer to the State's evidence. However, since he proceeded to offer evidence in his case in chief, he waived his demurrer, and the sufficiency of the evidence must be determined from the record as a whole. *Rudd v. State*, 649 P.2d 791 (Okl.Cr.1982).

At about 9:00 P.M. on the evening of November 16, 1982, an undercover Tulsa police officer was approached by a man named Walker at a downtown Tulsa street corner. Walker, unaware of the officer's identity, agreed to purchase some marijuana for the undercover officer, and drove him some five or six miles to an establishment known as "Cotton's". The officer gave Walker ten dollars, and Walker entered the residence. He returned about two minutes later with a "dime" bag of marijuana. A "dime" bag consists of less than a quarter of an ounce of marijuana packaged in a plastic sandwich bag.

The officer subsequently arrested Walker for the drug violation. The officer thereafter secured a search warrant for the establishment, located at 3745 East 29th Street North in Tulsa. Just before 1:00 A.M. in the early morning of November 17, 1982, the officer and fellow lawmen re-

turned to the residence to execute the warrant.

The officers knocked at the front door of the residence and waited some fifteen seconds without response. They knocked a second time, identifying themselves and stating their purpose. After knocking a third time and again announcing their identity and purpose without response from within, the officers forcibly entered the residence. Upon entering, one of the officers saw the appellant exit the northeast bedroom of the house, clad only in underwear. A second individual, Leo Davis, a/k/a Leo Cotton, was found sleeping in a second bedroom in the back of the house.

The appellant asked to be allowed to put on his pants, and he identified trousers at the foot of the bed in the northeast bedroom as his. When an officer picked up the garment, a bag of marijuana fell out of a pocket. A search of the bedroom from which appellant emerged revealed the following: a small weighing scale hanging from a nail above the head of the bed; two smoking pipes, believed to contain marijuana residue, and a package of cigarette papers on a shelf next to the scales; fourteen boxes of 150-count Glad sandwich bags underneath the bed; an opened box of baggies on a dresser; a bag of marijuana in a cardboard box in the top drawer of the dresser; a cash register on top of the dresser containing money and a traffic ticket in appellant's name; and an insurance change-of-beneficiary form bearing appellant's alias in the top drawer of the dresser.

The officers also found a trap door under the carpet in the bedroom. Beneath the trap door were found approximately one hundred bottles of liquor and almost two hundred "dime" bags of marijuana. In the living room of the residence were a coin-operated pool table and juke box, and behind the juke box was a case of approximately twenty-four bottles of unstamped wine.

When the lawmen announced· that both of the occupants of the residence were to be arrested, appellant said, "hey, don't take my brother, he didn't know anything about that stuff. It's mine." Also, appellant asked the officers to empty the coin storage bin of "his" juke box before they left to prevent theft. Finally, a veteran officer testified that he had visited the establishment many times over a nine-and-a-half year period, and on all but one occasion the appellant was present and claimed to be in charge.

The defense presented evidence that Leo Davis, who is no relation to appellant, was the man who sold the marijuana to Walker on behalf of the undercover officer. Appellant claimed that he was merely visiting at the residence on the night in question, and had no knowledge of the contraband. There was defense testimony that as many as three or four other men lived in the residence, including appellant's eighteen-year-old son. However, the sufficiency of the evidence is a jury question, and as long as there is competent evidence from which the jury could reasonably conclude that the appellant was guilty as charged, this Court will not interfere with the verdict. *Booker v. State*, 644 P.2d 1075 (Okl.Cr.1982).

The evidence was clearly sufficient to support the verdict.

## II.

■ Appellant contends that his punishment on the marijuana charge was improperly enhanced by a prior liquor conviction. The prior conviction was a felony under 37 O.S.1981, § 538(c), which punishes persons knowingly engaging without a license in acts requiring a license under the Oklahoma Alcoholic Beverage Control Act and decrees that "a second or subsequent offense" is a felony subject to a fine and/or imprisonment "in the State Penitentiary for not more than one (1) year."

Appellant suggests that a felony subject to no more than one year in the penitentiary is not thè sort of prior conviction contemplated by the habitual offender act, 21

O.S.1981, § 51. However, Section 51(A), by its terms, applies to "[e]very person who, having been convicted of any offense punishable by imprisonment in the penitentiary, commits any crime after such conviction ..." Appellant's implicit suggestion that we limit the otherwise broad language of Section 51 to felonies punished by at least several years in the penitentiary is not persuasive.

### III.

Appellant argues that testimony that appellant was present on the premises on many occasions over the years, and claimed to be in charge, should not have been allowed. This argument is without merit.

The character of the premises and appellant's longtime connection thereto were relevant to the issues at trial, and did not threaten undue prejudice. The introduction of evidence is a matter for the exercise of the trial court's discretion, *Sonnier v. State*, 597 P.2d 771 (Okl.Cr.1979), and no abuse of discretion has been shown.

### IV.

Appellant further contends that he was denied the effective assistance of counsel, based upon counsel's failure to object to certain evidence and remarks of the prosecutor at trial. This contention is not well taken.

The issue is whether the accused was afforded reasonably competent assistance of counsel, i.e., whether counsel exercised the skill, judgment and diligence of a reasonably competent defense attorney, assessed in light of counsel's overall performance. The mere presence of unobjected error is not decisive. *Harrall v. State*, 674 P.2d 581 (Okl.Cr.1984).

Here, as in *Harrall*, we have carefully considered each of the alleged lapses in defense co-counsels' conduct in light of their performance as a whole, and we conclude that appellant received the effective assistance of counsel.

### V.

Appellant contends that an accumulation of error has been shown requiring reversal or modification of the judgment and sentence. However, this suggestion is without merit in view of our disposition of appellant's other propositions of error. *Cooper v. State*, 661 P.2d 905 (Okl.Cr.1983).

The judgment and sentence is AFFIRMED.

BRETT, J., concurs.