**Rolando Torino NELSON, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–84–596.**

Court of Criminal Appeals of Oklahoma.

March 10, 1988.

Terry J. Hull, Asst. Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Terry J. Jenks, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BRETT, Presiding Judge:

The appellant, Rolando Torino Nelson and his co-defendant, Edwin T. Brown, were tried by a jury in Muskogee County District Court, Case No. CRF–83–681, and found guilty of Second Degree Robbery in violation of 21 O.S.1981, §§ 791, 797. Appellant waived jury sentencing, stipulated to two prior felony convictions, and was sentenced by the trial court to thirty (30) years' imprisonment.

On November 29, 1983, at a few minutes past 3:00 p.m., three black men robbed Mickey's Liquor Store in Muskogee. Two of the men actually entered the store, while the third drove the getaway car belonging to co-defendant Brown. Ms. Barbara Bryant, the clerk, was the only person in the store when the robbery occurred; one of the robbers held her down on the floor while the other emptied the cash register. The only witness was Ms. Veda Brassfield. She observed the incident for a few seconds from outside the store window before running to get help. Upon seeing Ms. Brassfield looking through the glass, the two men exited the store, jumped into the idling car, and drove away.

As the men were leaving, Ms. Bryant phoned the Muskogee Police Department. Officer Roger Lee was patrolling the area and responded immediately to the reported robbery. When he arrived at Mickey's, he obtained a description of the getaway car from Ms. Brassfield and broadcast it over his radio. He continued questioning Ms. Brassfield and Ms. Bryant about the robbery and its perpetrators.

Sergeant Henry Duncan was patrolling near Mickey's when he spotted a car which matched the description given by Officer Lee. He began following the suspect vehicle, lost sight of it, and shortly thereafter encountered it sitting empty on the side of the road. The car was abandoned near an establishment called "Katy's Grill" but more popularly known as "Shaw's Place." Officer Frank Enloe arrived to help Sergeant Duncan and the two entered "Shaw's" to look for the suspects.

Upon entering the tavern, the officers searched for anyone resembling either the occupants of the escape vehicle or the suspects described by Officer Lee. They found the appellant, Kenneth Matthews, and a man named Jerry Conard and took them to the parking lot for questioning. As the appellant and Matthews were being

escorted outside, Officer Lee and Veda Brassfield drove up and she told them that the two men were the ones she had seen rob Mickey's. She then identified Jerry Conard as the third man involved, but later determined that she could not identify him or anyone else as the driver of the getaway car.

The three suspects, appellant, Matthews, and Conard, were then taken to Mickey's for a show-up in the presence of the victim, Ms. Bryant. She identified Matthews and the appellant as the robbers, but said that Conard was not involved. Conard was then released. After Matthews and appellant were taken to the police station, Matthews confessed to having committed the robbery with the help of appellant and co-defendant Brown. Based on this information, the police obtained a warrant and arrested Brown. In exchange for a suspended sentence, Matthews testified against Brown and appellant at trial.

In his first assignment of error, appellant claims that because his arrest was made without probable cause, the admission of evidence obtained as a result of the arrest violated his Fourth and Fourteenth Amendment rights. More specifically, appellant claims that the in-court identification testimony of Ms. Brassfield and Ms. Bryant, as well as State's Exhibits two (appellant's jacket) and three (appellant's cap), should have been suppressed as the fruit of the illegal arrest.

■ According to 22 O.S.Supp.1986, § 196, an officer may make a warrantless arrest when a felony has been committed and "he has reasonable cause for believing the person arrested to have committed it." An officer has reasonable or probable cause for making a warrantless arrest if, at the time of the arrest, "the facts and circumstances within [his] knowledge and of which he had reasonably trustworthy information would be sufficient to warrant a prudent man in believing that the person arrested had committed ... the offense." *Carter v. State*, 738 P.2d 562, 563 (Okl.Cr. 1987). Although the appellant and Matthews were not formally arrested until they arrived at the police station, the fact that their liberty of movement was restricted when they were taken into custody at Shaw's made that moment the actual time of arrest for purposes of probable cause. *Henry v. United States*, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); *Castleberry v. State*, 678 P.2d 720 (Okl.Cr.1984), aff'd 471 U.S. 146, 105 S.Ct. 1859, 85 L.Ed. 2d 112 (1985). Therefore, the officers were required to have probable cause to arrest appellant and Matthews when they took them into custody at Shaw's.

■ Officer Duncan had a description of the suspects and had actually seen them driving in the getaway car which he found abandoned across the street from the arrest site. Since Mickey's Liquor Store was just a few minutes' drive from Shaw's, the robbers could have easily made it there by the time the officers arrived. In addition, Ms. Brassfield's identification of the suspects supported the officers' decision to take these men into custody. Under these circumstances, we believe that reasonable grounds existed for arrest. Since the appellant was not subject to an illegal search and seizure, the admission into evidence of Ms. Brassfield's and Ms. Bryant's in-court identification did not constitute a violation of his Fourth and Fourteenth Amendment rights. While the same reasoning would apply to the admission of State's Exhibits two and three, that issue is not properly before this Court. Exhibit two was admitted without objection and number three was admitted over an objection of an improper chain of custody. Neither sufficed to preserve the soundness of their admissibility for review. *Kelsey v. State*, 744 P.2d 190 (Okl.Cr.1987).

■ In his second assignment of error, the appellant claims that both Ms. Bryant's and Ms. Brassfield's in-court identification of him were the fruit of his illegal show-up and were thus admitted in violation of his Fourteenth Amendment rights. The legality of a pre-indictment show-up is determined according to the "fundamental fairness" requirement found in the Fourteenth Amendment. *Manson v. Brathwaite*, 432 U.S. 98, 113, 97 S.Ct. 2243, 2252, 53 L.Ed.2d 140, 153 (1977). The admission of an in-

court identification based upon even a highly suggestive pre-indictment show-up is fair as long as the identification is considered reliable under the "totality of the circumstances." *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Chatman v. State*, 716 P.2d 258 (Okl.Cr. 1986); *Goudeau v. State*, 637 P.2d 859 (Okl.Cr.1981). Since the danger sought to be avoided is misidentification due to the suggestiveness of the show-up, the factors to be considered in determining the reliability of the in-court identification focus upon the quality of the witness's observations before the show-up occurred. These factors include: opportunity of the witness to view the criminal at the time of the crime; witness's degree of attention; accuracy of witness's prior description of criminal; level of certainty demonstrated by witness at the time of the confrontation; and length of time between crime and confrontation. *See Neil v. Biggers.*

In the instant case, there was conflicting testimony given by the State's witnesses concerning both the Shaw's and the Mickey's Liquor Store show-ups. Some witnesses testified that the show-ups included Matthews and appellant as well as some plainclothes policemen, while others testified that they consisted only of the suspects and their police escorts. Although these show-ups could be considered suggestive, the witnesses' in-court identifications of appellant were nonetheless admissible if reliable under the totality of the circumstances approach.

During the robbery, Ms. Bryant was held down to the floor by one of the men. She testified that his stomach was in her face and that she got a good look at his clothing. When Ms. Brassfield came to the window, the man holding Bryant let her go. Ms. Bryant was able to observe the robbers' uncovered faces as they finished emptying the cash register and then fled the scene. Ms. Brassfield watched the incident for a "few seconds" from outside Mickey's. While running for help, she turned and saw the robbers as they exited the store. According to Officer Lee, Ms. Brassfield gave him a description of the getaway car as well as the perpetrators. Although Ms.

Brassfield mistook Jerry Conard for one of the robbers during the show-up, Ms. Bryant was certain during the subsequent confrontation that appellant and Matthews but not Conard had committed the crime. The women's identifications, therefore, were consistent. The fact that little more than an hour had passed between the commission of the robbery and the show-ups also contributed to the reliability of their identifications.

■ After applying the five factors used to determine reliability under the totality of the circumstances approach, we believe that the in court identifications of appellant were not the product of the arguably suggestive show-ups, but were instead based upon the witnesses' observations of him during the robbery. The in-court identification testimony of which appellant complains was reliable and its admission into evidence did not violate appellant's Fourteenth Amendment right to fundamental fairness.

Appellant's third assignment of error attacks the sufficiency of the evidence upon which his conviction was based. The appellant argues that because the evidence—circumstantial and direct—presented at trial was not "inconsistent with a reasonable theory of his innocence", it was insufficient to establish his guilt beyond a reasonable doubt.

■ In *Spuehler v. State*, 709 P.2d 202 (Okl.Cr.1985), this Court adopted the United States Supreme Court standard for determining whether evidence properly admitted at trial is sufficient to support a conviction. The test is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). We believe that the *Jackson–Spuehler* test is the proper measure of sufficiency whether the evidence is direct, circumstantial, or both. The direct and circumstantial evidence properly presented in the instant case could have

supported a finding by any rational trier of fact of guilt beyond a reasonable doubt and was thus sufficient under the *Jackson–Spuehler* standard. Therefore, the appellant's third assignment of error is without merit.

█ In his fourth assignment of error, appellant argues that the thirty year sentence which the court imposed upon him was excessive. Unless appellant's sentence was, under all the facts and circumstances, so excessive as to shock the conscience of this Court, we will not modify it. *Freeman v. State*, 721 P.2d 1331 (Okl.Cr.1986); *Scott v. State*, 674 P.2d 54 (Okl.Cr.1984). In this case, the appellant stipulated to two former felony convictions and was thus subject to the minimum twenty year sentence requirement set forth in 1978 Okla.Sess.Laws, ch. 281, § 1, now amended as 21 O.S.Supp. 1986, § 51. The trial judge imposed a thirty year sentence—ten years more than the statutory minimum. In light of appellant's two former felony convictions and the facts in the instant case, the thirty year sentence which appellant received does not shock the conscience of this Court. Therefore, the sentence will stand. Finding no error, we AFFIRM.

BUSSEY and PARKS, JJ., concur.