**Buddy Junior BRISTOL, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–87–295.**

Court of Criminal Appeals of Oklahoma.

Oct. 24, 1988.

Gloyd McCoy, Asst. Appellate Public Defender, Norman, for appellant.

Robert H. Henry, Atty. Gen., Sandra D. Howard, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Judge:

Buddy Junior Bristol, appellant, was tried by jury and convicted of Indecent Exposure (21 O.S.Supp.1984, § 1021(A)(1)), After Former Conviction of Two or More Felonies (21 O.S.Supp.1985, § 51(B)), in Case No. CRF–86–74, in the District Court of Mayes County, the Honorable William J. Whistler, District Judge, presiding. The jury assessed punishment at imprisonment for twenty five (25) years. Judgment and sentence was imposed in accordance with the jury's verdict. We affirm.

On Sunday, July 23, 1986, at about 3:30 p.m., D.B. took her daughter, three sons, and a niece swimming at Snake Creek near Locust Grove, Oklahoma. These children range in age from thirteen to two years old.

As D.B. and the children were preparing to leave in their car two hours later, S.P., D.B.'s thirteen-year-old daughter, pointed out a man walking toward them. The man was about fifteen feet away when D.B. first saw him and he wore only cutoff jeans, which were unbuttoned and unzipped. The man masturbated as he walked toward the car, stopped about ten feet away, thrust his pelvis forward, and grinned.

In its case-in-chief, the State presented two witnesses, D.B. and S.P. S.P. was not permitted to make an in-court identification of appellant because the preliminary hearing magistrate determined her identification of appellant had been tainted by an impermissibly suggestive pre-trial photographic lineup, but she did testify as to her personal knowledge of the events at Snake Creek.

Appellant did not take the stand during the guilt or innocence phase of trial as a tactical decision to prevent being impeached by his previous convictions, one of which was for sodomy. (Tr. at 287). Appellant's brother appeared as an alibi witness and testified appellant was home with him that Sunday and could not have been the man who exposed himself at Snake Creek. Appellant also presented an expert witness, the gist of whose testimony was "eyewitness identification under virtually all circumstances is quite suspect and generally quite flawed." (Tr. at 198). The expert witness testified that only about 25% of eyewitness identifications are reliable.

On rebuttal, the State presented four witnesses who testified they saw appellant and his brother at Snake Creek on the day of the crime before and after the indecent exposure. Three of the witnesses knew appellant by sight and one talked to him earlier in the day before the indecent exposure.

For his first assignment of error, appellant asserts the trial court erred by refusing to give his requested cautionary instruction on eyewitness identification.

> Where the opportunity for positive identification is good and the witness is positive in [her] identification and [her] identification is not weakened by prior failure to identify, but remains, even after cross-examination, positive and unqualified, the testimony as to identification need not be received with caution—indeed, the cases say that '[her] [positive] testimony as to identity may be treated as the statement of a fact.' For example, a positive, unqualified identification of defendant by one witness is sufficient for conviction even though half a dozen witnesses testify as to an alibi.

*McDoulett v. State*, 685 P.2d 978, 980 (Okla.Crim.App.1984), quoting from *Commonwealth v. Kloiber*, 378 Pa. 412, 106 A.2d 820, 826 (1954).

■ Here, D.B. made an in-court identification of appellant as the man who exposed his genitalia to her and the children. Her

opportunity to see appellant at the time of the crime was unobstructed, the light was good, and she accurately described appellant and positively identified him from a photographic lineup. Her in-court identification of appellant remained positive and unqualified, even after extensive cross-examination. Moreover, the jury had heard extensive testimony from an expert witness concerning the unreliability of eyewitness identification. We find the trial court did not err in refusing to give appellant's requested cautionary instruction on eyewitness identification.

■ For his second assignment of error, appellant asserts thirteen-year-old S.P.'s testimony should have been suppressed. Appellant relies solely on authority concerning suppression of an in-court identification. We find these cases inapplicable, as S.P. did not make an in-court identification of appellant at trial as the man who exposed his genitalia to her. S.P. testified as to her personal knowledge of the events at Snake Creek and was placed under oath; therefore, it was for the jury to decide what credence should be given to her testimony. *Gray v. State,* 650 P.2d 880, 885 (Okla.Crim.App.1982). *See* 12 O.S. 1981, § 2602. We find the trial court did not err in refusing to suppress S.P.'s testimony.

■ For his third assignment of error, appellant asserts he was denied effective assistance of counsel because his court appointed trial counsel failed to cross-examine S.P. Appellant has the burden of proving counsel's failure to cross-examine the child was not sound trial strategy and that counsel's representation fell below an objective standard of reasonableness. *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Here, appellant speculates what cross-examination of S.P. might have revealed and what impact the failure to cross-examine might have had on the jury. Mere speculation is not enough to satisfy appellant's burden of proof. Moreover, "[p]resenting an alibi defense instead of rehashing the testimony of the eyewitness and possibly further damaging the appellant's case is a valid strategy." *Keller v. State,*

738 P.2d 186, 187 (Okla.Crim.App.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 323, 98 L.Ed.2d 351 (1987). This assignment is meritless.

For his fourth assignment of error, appellant argues D.B.'s testimony should have been suppressed. Inasmuch as appellant only cites authority concerning suppression of an in-court identification, we will confine our inquiry to this issue and will not address whether all of D.B.'s testimony should have been suppressed.

S.P. failed to pick appellant's picture from a five photograph lineup. D.B. viewed the lineup and identified appellant. S.P. then looked at this same lineup again, after she knew her mother had picked appellant's picture, and made a positive identification. For this reason, the preliminary hearing magistrate ruled that S.P.'s identification of appellant had been tainted by an impermissibly suggestive lineup. No such problem was found concerning D.B.'s identification of appellant.

■ Assuming *arguendo* the photographic lineup was unduly suggestive, a suggestive pre-trial confrontation will not invalidate a courtroom identification that can be established as independently reliable. *Boyd v. State,* 743 P.2d 658, 660 (Okla.Crim.App.1987).

In determining the inherent reliability of an in-court identification, we consider: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation. *Id.* at 660–61. *See also Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977).

■ Here, D.B. had an unobstructed view of appellant in good light at the time of the crime, her attention was highly focused on appellant, her description of appellant, with one exception, was highly accurate, her identification of appellant as the criminal at the lineup and at trial was highly certain, and there was no undue

lapse of time which would weaken her memory.

Appellant argues D.B.'s failure to mention in her initial handwritten statement that appellant was tattooed, and her testimony at trial that appellant's left arm was tattooed, while the photographs submitted by appellant at trial establish he has tattoos on both arms, both legs, and on his chest, required suppression of her in-court identification.

D.B. accurately described appellant as to his height, weight, beard, color of hair and its length, skinny legs, and the poor condition of his teeth. Although D.B. failed to mention appellant's tattoos in her handwritten report, the officer who took her first oral report testified at the preliminary hearing she said the man who exposed himself had "tattoos all over his body." (Ph.Tr. at 71) Since D.B. had identified appellant by name when she called the police, she did not think it important to mention the tattoos in the written report.

When counsel argued a motion to suppress D.B.'s in-court identification prior to trial because of her failure to mention the tattoos, the court expressed its view that:

> I think you have to remember the situation as it existed, when the witness was recalling what she saw. One, she is a mother ... and her daughter is sitting next to her viewing this male. What would be the focus of her attention, obviously the genitals[.] [S]he is looking at this man, and he's standing there and got an erection and her daughter is sitting next to her and she's trying to get the hell out of there. ... [I]f you approach the subject from that point of view, I don't know that I find it particularily alarming that she didn't notice that the man, the man's extremities, that his arms and legs were covered with tattoos. The Motion is overruled. [Tr. at 12–13]

We find D.B.'s failure to mention the tattoos went to the weight to be given to her testimony by the jury, and was not sufficient to require suppression of her in-court identification of appellant. This assignment is meritless.

For his fifth assignment of error, appellant argues he was denied a fair trial because of improper comments made by the prosecutor during voir dire and during closing arguments for the first and second stages of trial. We note initially that appellant failed to object to the question asked at voir dire and to all but one of the comments made during closing arguments and has, therefore, waived all but fundamental error for those unobjected to remarks. *Lawson v. State*, 739 P.2d 1006, 1008 (Okla.Crim.App.1987). We find no fundamental error. Moreover, the comments made during closing argument were fair comments on, and reasonable inferences from, the evidence. *Lewis v. State*, 732 P.2d 1, 3 (Okla.Crim.App.1987). Appellant objected to one comment, which objection was sustained and the jury was admonished to disregard the remark, thereby curing any error. This assignment is meritless.

For his sixth assignment of error, appellant argues his punishment is excessive. Title 21 O.S.Supp.1985, § 51(B), requires a minimum sentence of imprisonment for twenty years upon conviction of a felony after former conviction of two or more felonies. Appellant has three prior felony convictions. The statute does not provide for a maximum sentence but leaves that determination to the trier of fact. *Mornes v. State*, 755 P.2d 91, 95 (Okla.Crim.App.1988). In reviewing the punishment imposed above the minimum sentence of twenty years imprisonment, we do not have the power to modify the punishment unless we can conscientiously say the sentence is so excessive as to shock the conscience of the Court. *Id.* After studying the facts and circumstances of this case, we cannot say the sentence imposed of twenty five years imprisonment shocks the conscience of the Court. This assignment is meritless.

For his seventh assignment of error, appellant argues his sentence should be modified to exclude payment of court costs. By imposing payment of costs, the court was not unduly punishing appellant but merely following the dictates of the

statute. *Armstrong v. State,* 742 P.2d 565, 567 (Okla.Crim.App.1987). While appellant is presently an indigent, this Court cannot know his financial status when the costs are due to be paid. This issue is prematurely raised. *Id.*

For his final assignment of error, appellant argues the cumulative effect of error requires either reversal of his conviction or modification of his sentence. If there is no individual error, there can be no error by accumulation. *Mornes,* 755 P.2d at 95. This assignment is without merit.

In light of the above, appellant's judgment and sentence should be, and hereby is, AFFIRMED.

BRETT, P.J., and BUSSEY, J., concur.