Henry Harold PARKER, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–88–365.

Court of Criminal Appeals of Oklahoma.

Aug. 26, 1994.

As Corrected Sept. 13, 1994.

Order Granting Rehearing and
Reaffirming Decision Dec. 28, 1994.

Thomas E. Salisbury, William H. Luker, Asst. Appellate Public Defender, Norman, for appellant.

Robert H. Henry, Atty. Gen., David Walling, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

LANE, Judge:

Appellant, Henry Harold Parker, was convicted of First Degree Murder and sentenced to death following his conviction in Case No. CRF–87–208, in the District Court of Seminole County. Appellant has raised a number of issues with respect to the allegation of error in both stages of his trial, however, we find that we need address only the allegations relating to the first stage of the trial, in that error occurred which requires a new sentencing proceeding in this case.

■ Insofar as one of Appellant's allegations of error concerns the sufficiency of the evidence offered against him, we will review the facts of the case in light of the dictates of *Spuehler v. State*, 709 P.2d 202 (Okl.Cr.1985):

The test to be utilized by a reviewing court when determining if the State presented sufficient evidence to support a conviction where both direct and circumstantial evidence has been introduced is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt.

*Drew v. State*, 771 P.2d 224, 227 (Okl.Cr. 1989).

In August of 1984, Appellant and the victim in this case, Warren Thrasher, entered into a contract involving conveyances of a number of pieces of property. In exchange for a mobile home park valued at $1,110,000.00, Thrasher agreed to give Appellant clear title to three pieces of property, one in Muskogee, one in Seminole and one in Meeker. Although the total value of the property was $389,000.00 [1], two different banks held various mortgages on the land in the amount of $58,702.00. Thrasher was to satisfy the mortgages within six months of the closing date.

Thrasher had a variety of problems with the mobile home park and soon became convinced that Appellant had fraudulently induced him to buy the property. There was a dispute as to the actual number of lots at the park, as well as a number of zoning problems which had not been disclosed. As a result of his dissatisfaction with the trailer park, on the advice of counsel, Thrasher decided not to pay off the mortgages on the three pieces of property which he had conveyed to Appellant.

Appellant sued Thrasher in the District Court of Muskogee County, where he received a judgment for $70,000.00 on December 31, 1986. The trial court ruled against Thrasher on his counter claim for fraud. Thrasher filed an appeal of the district court's decision and did not pay either the judgment against him or the original mortgages. As a result, Appellant was unable to obtain new mortgages on the properties and lacked the ability to obtain funds to support his ongoing business concerns. Foreclosure proceedings were instituted by the two banks against both Appellant and Thrasher.

Around Christmas of 1986, Appellant approached B.G. Peoples on a number of occasions asking if he knew anyone that would be willing to commit a murder. Appellant told Peoples that he would get his trailer park back if Thrasher were dead. Although Peoples believed that Appellant was serious about his request, he did not want to get involved and took no action on the request.

Thrasher filed his brief in the pending civil appeal in mid-September of 1987. Although Appellant's response was due in late October, he was not represented by counsel, his previous attorney having withdrawn from the case.

On October 23, 1987, Appellant took the van which he normally drove to a mechanic in Muskogee. The mechanic, Dale Walker, testified that the two men were old friends and often bought and sold vehicles from each other. Appellant told Walker that he wanted to sell the van and that the interior lights needed to be repaired. He left the van and returned to his home in Walker's blue El

1. The balance of the purchase price was paid in cash.

Camino. The El Camino had a white camper shell on the back.

On October 25, neighbors of the Thrashers noticed a blue El Camino with a white camper shell on it moving very slowly down the street in front of the Thrasher's home. Kenny Davis was in the line of traffic which was backed up behind the El Camino. He testified that he followed the blue car for a short distance until he was able to pass. When he passed the car, he looked over to the driver and made an obscene gesture, expressing his displeasure at the slow speed which the car was going. He later identified Appellant in a photo lineup and at trial as the driver of the slow moving El Camino.

Wanda Gardner lived across the street from the Thrashers. She testified the she saw a blue El Camino drive slowly past the Thrasher's house with a line of cars following it. A few minutes later, she saw the same car in front of the house again. She moved away from the window, then heard five shots. When she looked outside again, she saw the El Camino speed away from the Thrasher's house.

After hearing the shots, Mrs. Gardner called her son, who was a local police officer, and the home of one of the Thrasher's children. She told her son about seeing the El Camino. He advised her to call the police department and report what she had seen.

Eight year old Shannon Ringle, whose home was adjacent to the Thrasher's testified that she saw a car drive through the Thrasher's driveway, honk, then back up and stop. She saw the driver get out of the car and pull on some brown pants up to his waist. She saw him get a black gun out of the car and walk toward the house. She went inside her house, then heard five shots.

Mrs. Thrasher arrived at her home soon after the shooting occurred. She found her husband lying on the ground under the carport. He had been shot five times. The medical examiner testified that either of two shots could have been fatal.

When the police arrived, Mrs. Thrasher and her son told police that Henry Parker had done the shooting. Both testified at trial that Parker had been violent and threatening

in the past and they had immediately thought of him as a suspect. Officers spoke to Mrs. Gardner who told them about the blue El Camino. They immediately broadcast that information over the police radio.

Officer Travis Palmer of the Wewoka Police Department heard the broadcast putting him on notice to watch for a blue pickup with a white camper shell. He stopped the blue El Camino that Appellant was driving on eastbound I-40 about twenty-five minutes after the shooting was reported. Appellant explained that he was returning from a trip to Oklahoma City.

Due to the amount of traffic on the air and inclement weather, Palmer was unable to make radio contact with Seminole police. His broadcasts were heard, however, he could not receive any communications, so he released Appellant.

Appellant's explanation of his activities to Deputy Palmer was in contradiction with the testimony of Deputy Dave Anderson who testified that he had passed a blue El Camino with a white camper shell going west on highway 9 while he was eastbound on his way to the Thrasher house. He explained that he had stopped and gone through Seminole on his way home, which would explain why his vehicle had been seen south of I-40. Appellant's name was added to the bulletin and officers were posted at various points in an attempt to apprehend Appellant.

At the time of his arrest, Appellant was wearing brown coveralls pulled up only to his waist and red rubber boots. A pair of brown gloves were found in the car. When the police car arrived at the station, Appellant got out of the car and walked for several steps in the gutter which was full of water. He then moved to the grass, where he scraped the soles of his boots rather vigorously. Subsequent testing of the boots did not reveal any substance which might have connected Appellant with the murder.

A gun and a rifle were eventually discovered under a bridge near where Appellant's car was first observed by Officer Anderson. Testing showed that the gun was the murder weapon, however, police were unable to trace

the ownership or possession of the weapons to Appellant.

While Appellant was in pretrial detention on this charge, he had conversations with two other inmates at the county jail concerning the establishment of an alibi defense. Through written notes and conversations, Appellant asked the two inmates to find people who would testify that he had been out shooting a gun on a farm near Seminole. One inmate, Gerald Warledo, was provided with a map of the area where the shooting was to have occurred. Instead of contacting anyone to have them be witnesses, Warledo notified the Sheriff and gave him the notes. Warledo also testified as to Appellant's request at trial.

The State theorized that Appellant's attempt to create an alibi involving the firing of a gun was in anticipation of a positive result on the forensic testing done on his hands by police immediately after his arrest. The test, however, did not reveal the presence of evidence which would indicate that Appellant had recently fired a weapon.

We find that the evidence introduced against Appellant more than satisfied the *Spuehler* requirements. After examination of the testimony and evidence offered in the light most favorable to the State, we easily reach the conclusion that "any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt." *Id.* Accordingly, we find that Appellant's eighth assignment of error is without merit.

In his first allegation of error, Appellant claims that he was denied a fair opportunity to appeal his conviction because many portions of the transcript are incomplete. Specifically, Appellant points out thirty-four places where bench conferences were held out of the hearing of the jury, which were not transcribed by the court reporter. He cites *Van White v. State*, 752 P.2d 814 (Okl.Cr. 1988) and *Kelly v. State*, 692 P.2d 563 (Okl. Cr.1984) in support of his allegation that the failure to properly transcribe the bench conferences requires the vacation of his sentence and reversal of his conviction. We disagree with this contention.

In *Van White*, this Court adopted the position taken by Judge Brett in his specially concurring opinion in *Kelly*. The Court reversed the conviction because the voir dire proceedings had not been transcribed. The Court held that in order to "effectuate this Court's mandatory review obligation under 21 O.S.Supp.1985, § 701.13(c)(1), a complete stenographic record shall be taken in all capital cases." *Van White*, 752 P.2d at 821. Because there was no record of the jury selection process, this Court was unable to determine "whether or not the jury was improperly prejudiced to impose a sentence of death during voir dire." *Id.*

In the present case, all the non-transcribed portions identified by Appellant involve conferences between counsel and the trial court which were held outside the hearing of the jury. Although Appellant claims that these conferences were critical, he does not allege any error arising from a ruling of the trial court made during one of the conferences. In fact, there are no allegations of evidentiary error alleged at all.

Because the bench conferences were held outside the hearing of the jury, we are not inclined to include them in a blanket rule which would require automatic reversal as is the case with other portions of the trial such as jury selection. Lack of record of bench conferences does not hinder our ability to conduct the mandatory sentence review required under the Oklahoma Statutes. Conferences at the bench, while potentially effecting the actual evidence presented or the manner in which the evidence is presented, do not in and of themselves influence our determination of "whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor." Section 701.13(C)(1). Problems involving the rulings resulting from the conferences are easily appealed in their own right.

While we believe that the better practice in a capital case is the transcription of the *entire* proceeding, including any and all bench conferences or proceedings had in chambers, we are unable to conclude that any error has occurred in the present case which requires relief from this Court. Our ability to perform our required review is not

impeded, no rulings arising from one of these conferences are alleged to be in error. In short, Appellant has failed to demonstrate any reason for reversal of his conviction on this ground. "It is not error alone that requires the reversal of judgments of conviction, but error plus injury, and the burden is on the appellant to establish the fact that he was prejudiced in his substantial rights by the commission of error." *Harrall v. State,* 674 P.2d 581, 584 (Okl.Cr.1984).

Two of Appellant's allegations concern issues relating to pretrial matters, the venue of the trial and the jury selection process. In the first instance, Appellant claims that his request for a change of venue should have been granted because of pretrial publicity (four articles appeared in local papers) and that the jury selection process was invalid because the pool of jurors was made up of only those members of the community who hold valid driver's licenses. We do not find merit to either argument.

Appellant's Proposition XIII concerns his requested change of venue. When considering a claim of this nature, we have adopted the two-part test established by the United States Supreme Court in *Murphy v. Florida,* 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975):

> First, there are some cases in which prejudice will be presumed, if the fact pattern reveals "the influence of the news media, either in the community at large or in the courtroom itself, pervaded the proceedings." The key to this standard appears to be the "solemnity and sobriety to which a defendant is entitled in a system that subscribes to any notion of fairness and rejects the verdict of the mob." If the facts are not sufficiently egregious to give rise to the presumption, the so-called "totality of the circumstances" will be examined to determine whether the defendant received a trial which was "fundamentally fair." A review of the case should focus on the *voir dire* statements of the individual jurors, *voir dire* statistics, and the community atmosphere as reflected in the news media. (Citations omitted.)

*Walker v. State,* 723 P.2d 273, 278 (Okl.Cr. 1986).

The burden of establishing that he has been so prejudiced by publicity that he is unable to receive a fair trial lies squarely with the defendant. *Foster v. State,* 714 P.2d 1031, 1037 (Okl.Cr.1986). Merely demonstrating that some jurors had knowledge of the case is not enough to establish prejudice. *Wooldridge v. State,* 659 P.2d 943 (Okl.Cr. 1983). We do not find, from the record before us, that Appellant has established any prejudice by clear and convincing evidence which would justify our reversal of the trial court's denial of his motion. *Costa v. State,* 753 P.2d 393 (Okl.Cr.1988). The record of voir dire indicates that a fair jury was selected and Appellant fails to show that the selection process was tainted by media coverage. The trial court properly refused to move the trial.

Likewise, we find no merit to Appellant's claim that the jury selection process is inherently unconstitutional because non-drivers are eliminated from the pool of potential venireman and because the trial court has the authority to excuse those persons over seventy who may wish to be voluntarily excused. We find this system of selection to be no different from the previous process wherein citizens were summoned for jury duty based on their registration as voters or because of their payment of personal property tax. *Grimes v. State,* 512 P.2d 231 (Okl. Cr.1973); *Anderson v. State,* 511 P.2d 1128 (Okl.Cr.1973). We have long held that in order to raise a significant challenge to the composition of a jury pool, an appellant must first demonstrate under-representation of a certain distinctive group. *Litteer v. State,* 783 P.2d 971 (Okl.Cr.1989). Next, he must show that the under-representation is due to a systematic effort on the part of the State to exclude members of that class from service. *Fox v. State,* 779 P.2d 562 (Okl.Cr.1989), *cert. denied,* 494 U.S. 1060, 110 S.Ct. 1538, 108 L.Ed.2d 777 (1990). Appellant has not met either burden in the present case.

While we agree with Appellant that it may be desirable to have every citizen subject to jury service, no system has yet been developed which would somehow accurately access the names and addresses of all members of a

community which were competent to serve. The system in place at the time of Appellant's trial adequately provided a representative cross-section of the community. There is no error here.

The next series of arguments deal with Appellant's discontent with his counsel's performance at trial. In his fourth allegation of error, Appellant claims that he was denied the effective representation of counsel for a number of reasons. Insofar as these reason are generally raised individually as additional allegations of error, we will address the issues on their own merit and with respect to the effect of the resolution of each on the issue of Appellant's representation by counsel.

We judge claims of ineffective assistance of counsel in light of the Supreme Court's guidelines established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We considered the application of the test in *Pierce v. State*, 786 P.2d 1255 (Okl.Cr.1990), and held:

> We have long held that allegation of incompetency of counsel will be judged by "whether counsel exercised the skill, judgment and diligence of a reasonably competent defense attorney in light of his overall performance." *Fisher v. State*, 736 P.2d 1003, 1011 (Okl.Cr.1987); *Cotton v. State*, 679 P.2d 1305, 1308 (Okl.Cr.1984). In review of such a claim, we are to accord a strong presumption that counsel was at least constitutionally competent. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We will not make this judgment in hindsight, second guessing counsel's trial strategy. *Dutton v. State*, 674 P.2d 1134 (Okl.Cr. 1984).

In *Dutton v. State*, 674 P.2d 1134 (Okl.Cr. 1984), we held:

> A criminal defendant should receive reasonably competent assistance of counsel. *Johnson v. State*, 620 P.2d 1311 (Okl.Cr. 1980). However, this does not mandate

flawless counsel or counsel judged ineffective by hindsight. *Clark v. Blackburn*, 619 F.2d 431 (5th Cir.1980). *See also Johnson*, 620 P.2d at 1313.

With these tenets in mind, we will review the arguments raised by Appellant in Propositions II and III, as well as his claims that his counsel failed to make appropriate attempts to suppress forensic evidence and the identification made by one of the witnesses [2].

In his second proposition, Appellant claims that his arrest was made without probable cause. He then claims that his trial counsel should have made the appropriate efforts to suppress the fruits of the search of Appellant's car which followed the arrest. We disagree. Appellant admits that "a police officer may act upon facts or directions communicated to him over the radio and make an arrest." *Nealy v. State*, 636 P.2d 378 (Okl. Cr.1981). He then focuses on information which the police officers had, which ultimately proved to be erroneous [3]. The evidence clearly established that Mrs. Gardner told the police that she had observed a blue El Camino with an irregularly shaped white camper shell on the back. This information was relayed over the airways.

Additionally, the family of Warren Thrasher told police that they believed that Appellant was the perpetrator due to the acrimonious dealings between the two men. They testified at trial that Appellant had previously threatened Thrasher and that they were afraid for Thrasher's safety.

We considered the standard under which the existence of probable cause for an arrest must be reviewed in *Cooks v. State*, 699 P.2d 653, 657 (Okl.Cr.1985) *cert. denied*, 474 U.S. 935, 106 S.Ct. 268, 88 L.Ed.2d 275 (1985).:

> The test for determining the lawfulness of an arrest has been stated several times by this Court. It is, whether at the moment the arrest was made, facts and circumstances within the arresting officer's knowledge, and of which he had reasonably

---

2. We will not address claims made with regard to the second stage insofar as that stage is being returned to the trial court for a new trial.

3. At trial Appellant tried to establish that the description of the vehicle which police were searching for had been given as a green S–10 pick-up. This assertion was not supported by the testimony of the officers involved.

trustworthy information, were sufficient to warrant a prudent man to believe the arrestee had committed, or was committing, a crime.

Unlike the *Cooks* case, we do not find that the arrest in the present case was based only on the suspicions of the arresting officer. Reliable information concerning the vehicle which Appellant was driving was given over the radio. A stop was made of a car matching the description given by the witnesses. The driver was identified as Appellant. After Appellant was released by the first officer which stopped him, his name was added to the bulletin. The identity of the Appellant as the suspect was based on the information found out by the first officer and corroborated by the information given by Thrasher's family.

Because we find the existence of ample evidence to support a finding that the arrest was properly grounded in probable cause, we cannot agree with Appellant's claim that his counsel was ineffective for failing to move for the suppression of the arrest and its effects. Accordingly, there is no error presented here.

■ The next allegation of error which is raised individually and in connection with the claim of ineffective assistance of counsel concerns the participation of a legal intern in the trial process. In his third proposition, Appellant claims that the record fails to show that he gave his permission for the legal intern to assist in his case. He then argues that the legal intern's participation is per se ineffective assistance of counsel. He does not allege any specific instance where actual prejudice occurred because of the intern's actions.

While it is true that the record does not show an actual consent by Appellant to the representation, in a Supplemental Record, the State has filed an affidavit from the intern, Gary James. In the affidavit, James swears that Appellant executed a written permission form allowing James to assume representation along with the attorney of record, Merle Gile. The affidavit asserts that the trial court questioned Appellant about his consent in open court and did not receive any complaint. Additionally, the trial court introduced James as an intern to the jury and explained that his class schedule may necessitate his absence from some of the proceedings. At no time did Appellant indicate to the court that he did not wish to have James involved in the defense.

Appellant has likened James' involvement in the proceedings to a situation in which a criminal defendant is forced to defend himself. We find this situation to be distinctly different. Appellant was at all times represented by his attorney of record. James participation was minimal, involving only the direct examination of several defense witnesses (with which Appellant apparently has no complaint.) At all times, Appellant was represented the licensed attorney of his choice.

While we do not conclude that any violation of Appellant's significant rights has occurred, we find that the legislative comment section of the Rules of Professional Conduct, 5 O.S.Supp.1988, Ch. 1, App. 3–A provide insight into the effect of a possible violation. As pointed out by the State, the Scope section of the Rules provides that violation of a Rule does not automatically give rise to a "presumption that a legal duty has been breached." We find that Appellant had ample opportunity to protest James' participation in the trial if in fact he did object. There is no error here, nor is there a breach of any obligation which would justify a finding that Appellant's right to counsel has been infringed in any way.

In the next two sections of his complaint concerning the quality of his representation, Appellant claims that his attorney failed to properly object to the introduction of an eye witness identification and to testimony involving the results of the atomic absorption test. We find that Appellant has failed to substantiate any reason why either of these two grounds requires any action by this Court.

■ With respect to the identification, Appellant merely alleges that trial counsel failed to ask any questions which might establish that the photographic lineup shown to Kenny Davis was in some way flawed. He does not allege that the procedure used by

the police in the preparation of the lineup was improper or that the in-court identification was in any way tainted by some illegal means. He merely asserts that the reliability was not questioned, thus an evidentiary hearing is required for that purpose.

We have previously held that evaluation of the reliability of an eyewitness identification must be considered under the totality of the circumstances with the following factors as controlling:

(1) the eye witness' opportunity to view the defendant at the scene of the crime; (2) the witness' degree of attention; (3) the accuracy of the description given after the crime; (4) the witness' certainty at the first confrontation; and (5) the length of time between the crime and the confrontation.

*Binder v. State*, 717 P.2d 1143, 1145 (Okl.Cr. 1986). If these factors are met and the witness identifies the defendant at trial, we have held that the in court identification will not be considered tainted by a suggestive pretrial procedure. *Bristol v. State*, 764 P.2d 887 (Okl.Cr.1988); *Nelson v. State*, 755 P.2d 684 (Okl.Cr.1988); *Weatherly v. State*, 733 P.2d 1331 (Okl.Cr.1987).

In this case, Davis testified that he was angry at the driver of the blue El Camino because he was driving so slowly. Davis told the court that when he passed the car, he looked over at the driver and made an obscene gesture. He also testified that he did not pass very fast because his truck was old and did not accelerate very rapidly. We find that Davis' trial testimony clearly sufficiently reliable to overcome the potential of an overly suggestive lineup (assuming without deciding that the lineup was in fact faulty.) Accordingly, we cannot find that counsel's failure to challenge the testimony was representation below constitutional standards.

■ We find the same result is warranted with respect to the results of the atomic absorption test. We find no need to address whether or not counsel erred in not challenging the validity of the test since the results of the test were not prejudicial to Appellant. The F.B.I. agent who performed the test, John P. Riley, testified that the tests were negative. In fact, during his closing argu-

ments, Appellant relied on the results of the test to support his alibi defense. We do not find that Appellant was prejudiced by the introduction of the testimony, thus we cannot find that his counsel failed to provide adequate representation. We are unable to conclude that the tenets established in *Strickland* have been violated in this case.

■ In his fifth proposition of error, Appellant claims that the trial court failed to properly inquire into his competency to continue with the trial after he suffered an insulin reaction on the sixth day of trial. Once again, Appellant has done nothing more than make bare assertions in support of his argument. Although he claims that the trial court failed to make the proper inquiries as to whether Appellant was competent to continue with the trial, he fails to provide any evidence (or even inference) that Appellant was impaired.

After it became apparent that Appellant was having difficulties, the trial court recessed early so that Appellant could obtain medical care. On the morning of the next day, the trial court asked about Appellant's health:

**THE COURT:** ... We did quit a little early yesterday. The defendant was having apparently a little reaction to insulin.

But, Mr. Gile, I believe that Mr. Parker received the attention he needed. Is he read to proceed today?

**MR. GILE:** Yes, Your Honor.

Tr. VII, p. 2.

While the dialogue involving this subject was certainly short, Appellant was given the opportunity to inform the court as to his ability to proceed. Nothing was said about any impairment at that time, and in fact, there is still no evidence of impairment. Accordingly, we are unable to conclude that this issue was the subject of any error.

■ The final proposition relating to the first stage of trial is Appellant's Proposition VI. Appellant claims that his constitutional rights were violated when one of the State's witnesses perjured himself on the stand. Apparently, Appellant contends that because the witness, Gerald Warledo, was not truth-

ful as to the nature of the charges for which he was being held, the testimony should not have been allowed. We are unable to glean from the argument in exactly what way Appellant claims that error occurred.

The task of resolving conflicting testimony concerning factual disputes is not for the appellate court but, rather for the jury which is the exclusive judge of weight of the evidence and credibility of the witnesses. *Raymond v. State*, 717 P.2d 1147 (Okl.Cr.1986); *Renfro v. State*, 607 P.2d 703 (Okl.Cr.1980). We will accept all reasonable inferences and credibility choices that tend to support the jury's verdict. *Williams v. State*, 721 P.2d 1318 (Okl.Cr.1986); *Dyke v. State*, 716 P.2d 693 (Okl.Cr.1986). It appears from the transcript that counsel was aware of the nature of the pending charges. He asked Warledo:

Q. Don't you have some charged (sic) pending on you in another county?

A. Yes, I do.

Q. What was that for, child molestation or something?

A. No, assault and battery.

Tr. VIIII, 40.

No further mention was made of the charge. Wareldo was ultimately convicted of Injury to A Minor Child. While we agree that the testimony of the witness may not have been correct, we do not find that it undermines the trial in such a manner as to require relief from this Court. The correct charge could have been brought before the jury by proper cross-examination.

In any event, regardless of the actual charge involved, the jury certainly understood that Mr. Warledo was not just an average citizen. Clearly the testimony established that he was in jail when the conversations with Appellant had taken place and that he had previously been convicted of other felonies. As stated above, questions requiring judgment as to the weight and credibility which is to be afforded to a particular witnesses testimony is solely a job for the jury.

4. Thrasher's murder was five days before the effective date of 21 O.S.Supp.1988, § 701.9. The trial was five months after.

5. We have reaffirmed our position in subsequent cases, *see Hain v. State*, 852 P.2d 744 (Okl.Cr.

At this point, we have considered all the allegations which impact on the veracity of the jury's determination of guilt. Accordingly, we find that the conviction for First Degree Murder is **AFFIRMED.** We are unable to reach the same resolution with respect to the sentence of death.

In *Allen v. State*, 821 P.2d 371 (Okl.Cr. 1991), we held that the trial court committed reversible error when it failed to consider the sentencing option of life without parole, notwithstanding the fact that the statute which provided the alternative did not become effective until after the date on which the crime in question was committed. We held:

> It has long been recognized that a system of capital punishment must meet strict constitutional requirements to be upheld. The primary goal of any such system must be the allowance of individualized sentencing tempered by a controlled amount of discretion, exercisable by the trier of fact ... In the present case, we are presented by a situation where the sentencer did not fully understand the options available, thus rather than the more usual case involving "unbridled discretion," we have just the opposite. The trial court committed no less an error; however, when it took such a restricted view of its sentencing options that it failed to allow Petitioner the full benefit of all the sentences provided by law. (Citations omitted.)

In the present case, we find that the same error occurred when the trial court did not instruct the jury on all the sentencing options available [4]. We held in *Allen* that a change in punishment which does not increase the maximum allowable is not *ex post facto*, thus must be applied in all cases after the effective date of the statute.[5] Accordingly, we find that the death sentence meted out by the jury in this case must be **REVERSED** and the case **REMANDED** for a new sentencing proceeding.

1993); *Salazar v. State*, 852 P.2d 729 (Okl.Cr. 1993); and *Humphrey v. State*, 864 P.2d 343 (Okl.Cr.1993).

JOHNSON, V.P.J., and CHAPEL, J., concur.

LUMPKIN, P.J., concurs in part/dissents in part.

STRUBHAR, J., not participating.

LUMPKIN, Presiding Judge, concurring in part and dissenting in part:

While I agree Appellant's judgment should be affirmed, I must again respectfully disagree with my colleagues this case must be remanded for resentencing. I do this based on my dissents in *Humphrey v. State*, 864 P.2d 343, 345 (Okl.Cr.1993); *Hain v. State*, 852 P.2d 744, 753 (Okl.Cr.1993); and *Salazar v. State*, 852 P.2d 729, 741 (Okl.Cr.1993). I also dissent because I believe my colleagues' reasoning is based on an erroneous interpretation of the Eighth Amendment to the United States Constitution. *See Salazar v. State*, 859 P.2d 517, 519 (Okl.Cr.1993) (Lumpkin, P.J., dissenting to Order Denying Petition for Rehearing and Directing Issuance of Mandate).

## *ORDER GRANTING REHEARING*

Henry Harold Parker, petitioner, was tried by jury and convicted of Murder in the First Degree and sentenced to death in Seminole County District Court, Case No. CRF–88–6621. By written opinion handed down August 26, 1994, judgment was affirmed, and sentence was vacated with instructions to the District Court to resentence.

Appellant is before the Court on a petition for rehearing, arguing the Court did not address two issues duly submitted by supplemental brief.[1] We grant rehearing for these issues were inadvertently omitted from the written opinion.

 Petitioner's first proposition alleges the State failed to comply with a discovery order by failing to produce a radio communication time log created by incoming transmissions to the Seminole police station.

Two motions filed by the petitioner and granted by the trial court are relevant here:

a Motion to Compel Disclosure of Any Evidence Favorable to the Defendant; and a Motion for Production, of, among other things,

> Technical and physical evidence and reports concerning the same in the possession of the prosecution, including autopsy reports and sketches made by technical investigators, fingerprint analyses and all other technical reports . . .

The petitioner concedes this evidence was not favorable to him. It thus would not be discoverable under the Motion to Compel Disclosure. The issue then becomes whether the time log should have been produced as technical evidence.

In 1988, at the time of trial, technical evidence discoverable by the defendant included reports or statements by experts including the results of scientific tests, experiments or comparisons. *Moore v. State*, 740 P.2d 731 (Okl.Cr.1987). *Duvall v. State*, 825 P.2d 621 (Okl.Cr.1991), *cert. denied*, —— U.S. ——, 113 S.Ct. 224, 121 L.Ed.2d 161 (1991). The mere fact the time log was created by machine in the police dispatch office does not, in our view, push it into the category of discoverable technical evidence.

In reaching this decision we must make clear that we are applying the law at the time of the trial, and not the more expansive discovery law inaugurated two years later with *Allen v. District Court of Washington County*, 803 P.2d 1164 (Okl.Cr.1990).

 The second proposition concerns the ruling of the trial court prohibiting admission of the Last Will and Testament of the deceased and the court order admitting the will to probate. The defense sought to have the will admitted to show the deceased's wife stood to gain financially from the death of her husband, and thus may have had a motive to kill him. Absent this evidence, petitioner argues, he was denied his federal constitutional right to put forth his full defense. We disagree.

Admission of evidence is within the sound discretion of the trial court which will not be

---

1. Petitioner raised four propositions by supplemental brief, two of which addressed second stage issues. Petitioner advises the Court these issues are moot as a result of the remand for resentencing.

overturned on appeal absent an abuse of discretion. *Armstrong v. State*, 811 P.2d 593 (Okl.Cr.1991); *Behrens v. State*, 699 P.2d 156 (Okl.Cr.1985). In the present · case, Aline Thrasher, the wife of the deceased, was the State's first witness. She testified that her husband had "six or seven thousand dollars" worth of life insurance, and that credit life insurance had paid five hundred thousand dollars on an eight hundred thousand dollar loan. Later questioning made clear Mrs. Thrasher was the beneficiary of these policies. It being established that Mrs. Thrasher gained over a million dollars as the result of her husband's death, the defense had ample evidence to develop its theory of her motive to kill. Admission of the will was not necessary to develop this defense. We find therefore, no abuse of discretion on the part of the trial court.

In a final argument the petitioner cites new authority to support his argument, which was addressed in the original opinion, that reversal is required due to the fact a legal intern questioned some defense witnesses at trial. We do not find *People v. Schlaiss*, 174 Ill.App.3d 78, 123 Ill.Dec. 789, 528 N.E.2d 334 (1988) persuasive. In that case the Illinois Court of Appeals reversed the conviction of Schlaiss, who was represented by a legal intern, for the record failed to show Schlaiss acquiesced in the representation, or indeed, even knew the intern was not a licensed attorney. 123 Ill.Dec. at 791, 528 N.E.2d at 336. In the present case the record affirmatively does show the petitioner knew a legal intern was participating in his case, and, as explained in the original opinion, that he consented to the representation.

Having granted rehearing in order to consider these issues raised on appeal, we find they do not change the original decision to affirm the conviction for murder and vacate the sentence of death and remand for resentencing. The Clerk of the Court is directed to issue mandate forthwith.

**IT IS SO ORDERED.**

/s/ Gary L. Lumpkin
GARY L. LUMPKIN
Presiding Judge

/s/ Charles A. Johnson
CHARLES A. JOHNSON
Vice Presiding Judge

/s/ James F. Lane
JAMES F. LANE
Judge

/s/ Charles S. Chapel
CHARLES S. CHAPEL
Judge

/s/ Reta M. Strubhar
RETA M. STUBHAR
Judge