Johnny R. GRAY, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–80–687.

Court of Criminal Appeals of Oklahoma.

Aug. 30, 1982.

Jim McClendon, Broken Bow, for appellant.

Jan Eric Cartwright, Atty. Gen., Susan Talbot, Asst. Atty. Gen., Chief, Appellate Criminal Div., Oklahoma City, for appellee.

## OPINION

CORNISH, Judge:

The appellant, Johnny R. Gray, was convicted of Shooting with Intent to Kill in McCurtain County District Court Case No. CRF–79–74. In the same trial, he was acquitted of Shooting with Intent to Kill in Case No. CRF–79–75. Each case arose from a single shotgun blast fired by the appellant at Hammon Breedlove and Gregory Gray. The appellant was sentenced to ten (10) years' imprisonment.

On appeal, the appellant argues that: (1) he was deprived of equal protection in plea bargaining, (2) the trial court erred in failing to allow him two additional peremptory challenges, (3) the jury's verdicts were inconsistent, and (4) incompetent witnesses were allowed to testify at trial.

I

The appellant's first argument is predicated on a prevailing practice in McCurtain County whereby criminal defendants were urged to donate to a special Community Relations Fund. The fund had been created by the District Attorney's office. By court order the practice was halted, with no more deposits being allowed as of June 5, 1979. There are allegations in the record indicating that some criminal defendants received favorable treatment in plea bargaining in exchange for donations to the fund.

Prior to trial a hearing was held in the District Court of McCurtain County on the appellant's motion to dismiss, which was based on the grounds now asserted. At that hearing, the Attorney General's office represented the State, the District Attorney having disqualified himself. Called as a witness, the District Attorney testified that the Community Relations Fund was originally established upon receipt of a $200.00 payment to McCurtain County as reimbursement for the expenses of a preliminary hearing transcript. He stated that when he had initially sought to deposit this $200.00 in the general fund, he was told that it was not possible, because the budgets were frozen until the next year. He was informed that the only thing to do would be to set up a special account from which monies could be paid out during the year. The District Attorney stated that he then requested the County Treasurer to set up a fund in which all expenditures would be processed through the County Commissioners' office.

Only the first receipt of money represented a reimbursement. In addition to deposits made pursuant to plea bargaining arrangements, there were State reimbursements on reciprocal support cases. When asked by the court if the money in this fund was used to supplement the budget in the District Attorney's office, the District Attorney stated that to his knowledge office bills had been paid from the account. In overruling the appellant's motion, the trial court severely criticized the District Attorney's practice in regard to the plea bargain arrangements where monies were accepted, regardless of where they were deposited.

The appellant asserts denial of equal protection on grounds that the availability of plea negotiations was contingent on an accused's making a donation into the Community Relations Fund. The appellant argues that since he was indigent, he was precluded from entering into any plea bargain arrangement because he would not have been able to contribute to the fund. He concludes that this denial requires reversal of his conviction and dismissal of the charges against him.

An underlying principle of our system of justice and a basic command of equal protection is that justice be applied equally to all parties, poor man or affluent. *Schilb v. Kuebel,* 404 U.S. 357, 92 S.Ct. 479, 30 L.Ed.2d 502 (1971). In *Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), the Supreme Court held that in criminal trials a State can no more discriminate on account of poverty than on account of religion, race or color. 351 U.S. at 17, 76 S.Ct. at 589.

Ordinarily, the fact that a defendant is faced with the choice of going to trial or pleading guilty in open court without the benefit of a plea bargain does not entitle him to relief based upon the equal protection clause of the 14th Amendment. The State is never under any legal obligation to plea bargain with any defendant; for there is no constitutional right to plea bargaining. *Weatherford v. Bursey,* 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977). Provided the prosecutor has probable cause to believe that the accused committed an offense, the decision of whether to prosecute and of what charge to bring rests generally within the prosecutor's discretion.

Prosecutorial discretion, however, is not unbridled. The Supreme Court in *Bordenkircher v. Hayes,* 434 U.S. 357, 364–365, 98 S.Ct. 663, 668–669, 54 L.Ed.2d 604, (1978), quoting *Oyler v. Boles,* 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962), reiterated that " '[T]he conscious exercise of some selectivity in enforcement is not in itself a

federal constitutional violation' *so long as 'the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.'* " (Emphasis added.)

In *Bordenkircher,* the Court further stated that "[t]here is no doubt that the breadth of discretion that our country's legal system vests in prosecuting attorneys carries with it the potential for both individual and institutional abuse. And broad though that discretion may be, there are undoubtedly constitutional limits upon its exercise." *Supra,* 434 U.S. at 365, 98 S.Ct. at 669. (Footnote omitted.)

The landmark decision applying equal protection to the discriminatory enforcement of a law by administrative or executive officials is *Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). There the Supreme Court declared: "though the law itself be fair on its face, and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, *material to their rights,* the denial of equal protection is still within the prohibition of the Constitution." (Emphasis added.)

The question then becomes one of whether the discrimination alleged was material to the appellant's rights.

In *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), plea bargaining was recognized as an "essential component" of the administration of criminal justice:

Disposition of charges after plea discussion is not only an essential part of the process but a highly desirable part for many reasons. It leads to prompt and largely final disposition of most criminal cases; it avoids much of the corrosive impact of enforced idleness during pre-trial confinement for those who are denied release pending trial; it protects the public from those accused persons who are prone to continue criminal conduct even while on pretrial release; and, by

shortening the time between charge and disposition, it enhances whatever may be the rehabilitative prospects of the guilty when they are ultimately imprisoned. [Citations omitted.] 404 U.S. at 261, 92 S.Ct. at 498.

■ The recognition of plea bargaining as an essential component of the administration of justice, however, does not elevate it to a constitutional right. That is not to say, that a prosecutor can accept or refuse plea negotiations in a way that discriminates against defendants on account of their race, religion, economic status or other arbitrary classification. Furthermore, the essence of promises made in the plea bargain arrangement must be made known to the court. *Santobello,* supra, at 261, 262, 92 S.Ct. at 498, 499. Here it appears that contributions to the fund in connection with plea bargain arrangements were made without notice to the courts hearing the cases. When a criminal defendant is levied upon, the levy must be either in the form of a fine, a forfeiture, or restoration or costs, and must appear on the judgment and sentence of the case. Any solicitation and/or acceptance of contributions into a fund in exchange for favorable treatment in a criminal prosecution is illegitimate leverage and gross abuse of power.

■■ Because there is a presumption of regularity in prosecutorial conduct, the burden is on the appellant to establish that he was purposefully denied plea bargaining based upon some invidious criterion. Cf. *Murguia v. Municipal Court for Bakersfield Judicial Dist.,* 15 Cal.3d 286, 124 Cal.Rptr. 204, 540 P.2d 44 (1975) (where discriminatory enforcement was raised as a defense on equal protection grounds.) The record of the pre-trial hearing held upon the defense's motion to dismiss on August 23, 1979, shows that the appellant never attempted to plea bargain with the District Attorney. He asserts that had he attempted to, he would have been denied because he was financially unable to contribute to the fund.

Aside from the hypothetical nature of the appellant's claim, other facts constrain us from finding that the appellant's substantial rights were violated. Although the prosecution was commenced by the McCurtain County District Attorney's office on April 23, 1979, the Attorney General's office assumed the prosecution of the case shortly after the preliminary hearing held on July 3, 1979, and represented the State through the conclusion of the trial. Additionally, the practice complained of was halted, with the fund being frozen as of June 5, 1979. The appellant does not allege that he was ever denied an opportunity to plea bargain with the Attorney General's office. The case came for trial February 27, 1980, affording the appellant nearly seven months in which to attempt plea negotiations with the new prosecuting officials. Thus it appears under these circumstances that the absence of plea bargaining was largely attributable to the appellant's failure to seek a bargain prior to trial. We therefore hold that the appellant has not demonstrated a violation of his rights under the equal protection clause of the U.S. Constitution.

## II

The appellant next contends that the trial court erred in limiting him to five peremptory challenges to the jury panel. He argues that since he was required to defend two charges in the same proceeding, he should have been allowed two additional challenges.

Title 22 O.S. 1981, § 655, establishes the right of the State and criminal defendants to challenge jurors without cause. That section provides:

In all criminal cases the prosecution and the defendant are each entitled to the following peremptory challenges: Provided that if two or more defendants are tried jointly they shall join in their challenges; provided, that when two or more defendants have inconsistent defenses they shall be granted separate challenges for each defendant as hereinafter set forth.

First. In prosecutions for first degree murder, nine jurors each.

Second. In other felonies, five jurors each.

Third. In all nonfelony prosecutions, three jurors each.

While this statute does not specifically address the situation where two charges are tried in the same proceeding, or when a defendant is facing multiple counts in a single information, it is clear from the language that additional challenges are not warranted in such cases. Absent authorization under § 655, the trial judge was without authority to grant additional peremptory challenges. *Prichard v. State,* 539 P.2d 392 (Okl. Cr. 1975). Therefore, since the appellant was allowed the proper number of challenges under § 655, the trial court did not err in denying his motion for additional challenges.

## III

The appellant urges that the trial court committed error in accepting inconsistent verdicts. He argues that since any intent to kill Gregory Gray must necessarily arise from his intent to kill Hammon Breedlove under the doctrine of transferred intent, the jury's verdict of acquittal in the Gregory Gray case precludes a guilty verdict in the Hammon Breedlove case. We disagree. Consistency of multiple verdicts is not the test for assessing the validity of a particular verdict in a criminal case. Rather, a verdict is proper if it is supported by sufficient evidence. See, *Dunn v. United States,* 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932); *Woodard v. State,* 567 P.2d 512 (Okl. Cr. 1977).

## IV

Finally, the appellant urges as error the admission of incompetent testimony by two minor children of the ages of seven and ten. Title 12 O.S. 1981, § 2601, provides that "[e]very person is competent to be a witness except as otherwise provided in this Code." Nowhere in the evidence code is a child excluded from being a witness simply because of his age.

The legislative intent in enacting § 2601, as evidenced by the subcommittee's notes accompanying that section, was to enact "a general 'ground-clearing rule' eliminating all grounds of incompetency not specifically recognized" under the code. The subcommittee's notes continue to say that § 2601 was designed to abandon all prior tests of mental capacity such as that which previously applied to children, since issues of testimonial capacity "are more appropriately dealt with as issues going to the sufficiency of the evidence, its weight and credibility, and the oath and impeachment."

So long as the child has personal knowledge of the matters at issue, and has taken an oath or similar affirmation he may be allowed to testify. 12 O.S. 1981, §§ 2602, 2603. It is then for the jury to decide the amount of credence to be afforded such testimony. These prerequisites were met in the instant case. Further, the evidence submitted at trial was sufficient to support the jury's verdict. Therefore, this assignment of error is meritless.

For the above and foregoing reasons, the judgment and sentence is AFFIRMED.

BUSSEY, J., concurs.

BRETT, P. J., concurs in results.