**Robert A. BRECHEEN, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. PC–89–183.**

Court of Criminal Appeals of Oklahoma.

June 29, 1992.

118

Gloyd L. McCoy, Deputy Appellate Public Defender, Scott W. Braden, Asst. Appellate Public Defender, Allen Smith, Sp. Asst. Appellate Public Defender, Norman, for appellant.

Robert H. Henry, Atty. Gen., Sandra Diane Howard, A. Diane Hammons, Asst. Attys. Gen., Oklahoma City, for appellee.

OPINION

LANE, Presiding Judge:

Petitioner, Robert A. Brecheen, was convicted of Murder in the First Degree and Burglary in the First Degree in the District Court of Carter County, Case No. CRF–83–127. The crimes occurred when Petitioner was discovered during his burglary of the Ardmore home of Marie and Hilton Stubbs. The prosecution contended that the crimes were in retaliation for Mr. Stubbs' refusal to lend money to Petitioner. Petitioner claimed that he was forced to commit the crimes by an unidentified black man. Following the jury's guilty verdict, Petitioner was sentenced to death for the murder of Mrs. Stubbs and ordered to serve a term of twenty years for the burglary. Both convictions were affirmed by this Court following Petitioner's direct appeal. *Brecheen v. State*, 732 P.2d 889 (Okl.Cr.1987), *cert. denied* 485 U.S. 909, 108 S.Ct. 1085, 99 L.Ed.2d 244 (1988).

In this first application for post-conviction relief, Petitioner has raised eleven allegations of error. Our consideration of these claims will be strictly limited by the statutory rules which establish our authori-

ty in post-conviction matters, 22 O.S.1981, § 1086. We held in *Jones v. State*, 704 P.2d 1138 (Okl.Cr.1985), that the provisions of Section 1080 are to be applied only those claims which, for whatever reason, could not have been raised on direct appeal. *Id.* at 1140. *See also Johnson v. State*, 823 P.2d 370 (Okl.Cr.1992); *Banks v. State*, 810 P.2d 1286 (Okl.Cr.1991). In keeping with this authority, we will address only those propositions which could not have been brought at the time of the direct appeal. All other allegations are not properly before the Court.

Our consideration of the claims before us indicate that review is appropriate only with respect to three of the propositions, two of which concern jury selection and a third dealing with exculpatory evidence.[1] We consider these claims only because of either an intervening change in the law or because of some circumstance which occurred that was not known (or could not have been discovered) at the time of the direct appeal.

■ Petitioner has raised a number of issues involving the trial court's denial of his request for a change of venue and how that denial adversely affected his ability to obtain a fair trial before an impartial jury. Although we discussed the merits of related propositions raised in the direct appeal, we feel compelled at this point to note that in actuality, any complaint which Petitioner may have about the composition of his jury must be considered waived due to his waiver of preemptory challenges at trial.

Following the exercise of his seventh of nine preemptory challenge, Petitioner declined to employ. his remaining two challenges. At that point, the twelve jurors seated in the box were deemed acceptable and were sworn to try the case. As was the case in *Ross v. Oklahoma*, 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988), Petitioner may not complain about the specific composition of his jury, having dispensed with the opportunity to remedy the situation at the trial level. His claim then, that he was forced to use one of his challenges to excuse a potential juror, is totally lacking in significance, given the fact that he did not utilize all the challenges allowed by law. *Id.*

On another level, Petitioner's complaints concerning the general makeup of his jury are directed to the fact that the majority of those called to potentially serve on the jury were in some way familiar with the victim of this crime or her family. We will assume that this contention is general to the jury panel, rather than specific to individual jurors. The concern seems to be not that any single person on the jury was directly unacceptable in any articulable way, but that the prevalent familiarity[2] with the victims, who owned a popular western wear store, coupled with knowl-

---

1. The other allegations of error were either considered and rejected at the direct appeal or should have been raised at that point but were not:

   Proposition II, concerning the assistance of counsel during the second stage of the trial was not raised during the direct appeal, notwithstanding similar allegations with respect to the first stage proceedings. No compelling explanation for the late raising is offered.

   Proposition III is merely an attempt to obtain review of comments made by the prosecutor. Relief on this ground was rejected on direct appeal. 732 P.2d at 898.

   Proposition V concerns the so called "anti-sympathy" instruction. No claim was made in this regard on appeal.

   Proposition VI and VII concern the appropriateness of the death sentence in a case where only one aggravating factor is alleged. The claim was rejected on direct appeal. 732 P.2d at 898.

Proposition VIII challenges the constitutionality of the aggravating circumstance found by the jury. The argument was previously considered and rejected by this Court. 732 P.2d at 898.

Proposition IX alleges that additional instructions should have been given to the jury in the second stage. This should have been brought up on direct appeal and is therefore waived.

Proposition XI concerns misconduct by a juror which was the subject of an evidentiary hearing ordered by this Court prior to the decision in the direct appeal. The issue was raised by supplemental brief and considered in the original opinion rendered in the case. Any additional arguments in this regard should have been raised at that time.

2. Of the thirty nine veniremen called, at least twenty-eight had been customers in the store at some time. Most had read or heard some report of the crime.

edge of pretrial publicity culminated in a denial of due process. We find that due to a subsequent change in the standard under which such a claim must be reviewed, this issue is properly before us at this time.

Although several allegations of error were asserted with respect to the voir dire process as a part of the direct appeal, Petitioner properly points out that since the decision was rendered in his case, this Court has substantially changed the standard of review which is applied to questions of fair venue. At the time his appeal was considered, this Court utilized a relatively strict test when considering claims that a different venue should have been allowed when there has been extensive pretrial publicity in the county where the crime occurred. In connection with this Court's affirmation of the trial court's denial of Petitioner's request for a change of venue, we held that such a change is warranted only "when a criminal defendant establishes by clear and convincing evidence that a fair trial is a *virtual impossibility.*" *Brecheen,* 732 P.2d at 893.

■ Subsequent to our denial of Petitioner's claims on appeal, we considered the same issue in *Coates v. State,* 773 P.2d 1281 (Okl.Cr.1989). In that case, rather than considering whether selection of an impartial jury was a "virtual impossibility," we applied a two step test derived from previous cases by this Court in conjunction with dictates from the Supreme Court. The first prong of the analysis requires a finding that " 'the influence of the news media, either in the community at large or in the courtroom itself, pervaded the proceedings.' " *Coates,* 773 P.2d at 1286, quoting *Murphy v. Florida,* 421 U.S. 794, 798–99, 95 S.Ct. 2031, 2035–36, 44 L.Ed.2d 589 (1975). If the media involvement in the case is rampant, prejudice is presumed.

■ The second level of inquiry is more incorporeal in that it requires an examination of the entire process to determine whether or not the defendant received a " 'fundamentally fair' trial." *Id.* quoting *Brown v. State,* 743 P.2d 133, 136 (Okl.Cr. 1987). This determination must go farther than a simple consideration of whether or not each juror has promised to "set aside his opinion and consider only the evidence presented at trial." *Id.*

■ In the present case, we need not reconsider the issue of venue in any great detail. Although it is quite true that almost all of the seated jurors had some knowledge of the victim in this case due to her store ownership, and had some media exposure to the facts underlying the charges, there is no indication that the influence of the media "pervaded the process" or that the jury selected was "inherently unfair." None of the jurors actually seated were acquaintances of the victim, but had merely been customers in a store bearing her name. Likewise, though most recalled reading about the crime, none recalled specific details and all related that the reports would not influence their decision making or fact finding processes.

Although we have changed the standard of review to some extent, we have not changed the ultimate fact that a fair jury does not necessarily require totally uninformed jurors. We held in Petitioner's direct appeal, that "a defendant is not entitled to a jury which is unacquainted with the victims or the facts of his or her case." *Brecheen,* 732 P.2d at 893. *See also McBrain v. State,* 764 P.2d 905 (Okl.Cr. 1988); *Wilkett v. State,* 753 P.2d 383 (Okl. Cr.1988). Having applied the doctrines of *Coates,* we conclude that while the jury was not totally ignorant of the facts and circumstances behind this case, the trial court's decision to retain venue in Carter County was correct and no relief is warranted on this ground [3].

■ Our consideration of the claims made in Petitioner's tenth proposition is limited to consideration of whether his as-

---

3. Based on our finding that the jury was not unfairly influenced by either their knowledge of the victim or pretrial publicity, we see no need to review the effect that the lack of mitigating evidence may have had in accumulation with the above. We have otherwise dispensed with the allegations concerning the amount of mitigation evidence offered on the basis that such concerns should have been raised on direct appeal.

sertion that he was denied access to material evidence which would have a substantial impact on the veracity of the jury's verdict should be barred by his failure to raise it previously. Specifically, he now seeks additional review of the trial court's original refusal to allow his counsel admittance to the Stubbs home prior to the trial as well as our holding on direct appeal, that the trial court's decision was not error given that extensive pictures of the crime scene existed in addition to a diagram of the home.

Petitioner claims that additional bullet holes were found in the house, the existence of which was not disclosed to the defense, and that his investigator has discovered a witness who heard a police dispatch that a black man was in the area near the shooting. The evidence of additional bullet holes, presented by affidavit to the trial court, was disputed by several witnesses including the victim's husband. The trial court found, after careful consideration of the evidence presented that:

> [t]his claim is disputed by the affidavit of the person allegedly discovering this evidence. Additionally, even if the evidence did exist, the response filed by the District Attorney reveals it was not known to the prosecutor and would have been equally discoverable by the defense with the exercise of diligence. For these reasons this allegation is meritless.

O.R. 458.

Petitioner claims that the trial court erred by making this decision without benefit of an evidentiary hearing on the issue. In *Johnson*, 823 P.2d at 373, we held that "[t]he statutory section in question, 22 O.S. 1981, § 1084, provides that an evidentiary hearing will only be required 'if the application cannot be disposed of on the pleadings and record, or there exists a material issue of fact.' " As was true in *Johnson*, there is no indication by the trial court that any issues were presented which demanded an evidentiary hearing. The record demonstrates that the trial court considered all the evidence presented in reaching its decision. There is no allegation of additional evidence which should have been or would have been presented had an evidentiary hearing been undertaken. We find no reason presented sufficient to overcome the trial court's findings that this issue should be considered barred for failure to raise it in a timely manner.

We come to the same conclusion with respect to the allegations concerning the witness who claims to have heard a police dispatch about a black man in the area of the shooting. No reason is given why due diligence would not have discovered this witness prior to trial. Additionally, we find that the evidence (which is presented to us as hearsay on hearsay) would have been merely cumulative to the substantial evidence presented by Petitioner in connection with his defensive claim that he was forced into the Stubbs' home by an unidentified black man. The trial court also held that this claim was barred and we support that finding.

We have thoroughly reviewed the claims made by Petitioner in this Application for Post-Conviction Relief. We find that the bulk of the assertions are barred because of the failure to raise them in any earlier forum. Accordingly, we find no reason to deviate from the trial court's denial of relief. We further find that Appellant has exhausted his state remedies, having pursued both a direct appeal and post-conviction relief.

LUMPKIN, V.P.J., and BRETT and PARKS, JJ., concur.

JOHNSON, J., concurs in result.