2000 OK CR 10

**James Charles CHILDRESS, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

No. F 97–1471.

Court of Criminal Appeals of Oklahoma.

April 25, 2000.

As Corrected May 22, 2000.

Rehearing Denied June 7, 2000.

James Bowen, Lance Hopkins, Oklahoma Indigent Defense, Attorneys for Defendant at trial.

Diane Barker–Harrold, District Attorney, Darrell Dowty, Assistant District Attorney, Attorneys for the State at trial.

William H. Luker, Kimberly D. Heinze, Appellate Indigent Defense, Attorneys for Appellant on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, Seth Branam, Assistant Attorney General, Attorneys for Appellee on appeal.

## OPINION

JOHNSON, Judge:

¶ 1 James Charles Childress was tried by a jury in the District Court of Sequoyah County, Case No. CF 96–292, before the Honorable John C. Garrett, District Judge. Appellant was found guilty of first degree murder (Count 1), in violation of 21 O.S.Supp.1997, § 701.7, and larceny of a domestic animal (Count 2), in violation of 21 O.S.1991, § 1716.[1] The jury fixed punishment at ten (10) years' imprisonment on Count 2. After finding the murder was committed for the purpose of avoiding arrest or prosecution, the jury set punishment on Count 1 at death. The trial court sentenced Appellant accordingly and Appellant filed this appeal.[2]

## FACTS

¶ 2 Twenty-one year old Jason Wilson lived with his wife Kristin on a 160 acre farm located in Sequoyah County between Roland and Muldrow, Oklahoma. Jason ran cattle and operated two breeder poultry houses with his father, Joe Wilson. Around 3:00 p.m. on September 14, 1996, Jason talked with his father by telephone and the two planned a cookout that evening to celebrate Jason's mother's birthday. Joe Wilson drove to Jason's trailer home around 5:00 p.m. As he approached, he noticed Kristin's truck parked in the road. Kristin told Joe Wilson that Jason was still out on the farm.

¶ 3 Joe left the farm and then returned with his wife around 6:00 p.m. Jason still had not returned. Joe and Kristin became concerned and left the trailer to look for Jason. They discovered Jason's dead body in the pasture. Joe testified he knew immediately his son was dead. Jason had been shot in the head. After law enforcement officials arrived, they discovered a slain calf approximately 150 yards from Jason's body. The calf also had been shot and its throat cut.

¶ 4 Several individuals saw Appellant in the area of Wilson's farm on the afternoon of September 14, 1996. The next day, as a result of information obtained from these individuals, OSBI agents contacted Appellant's father-in-law and requested that he contact Appellant and ask him to come to the police station. Appellant came to the police station around 11:00 a.m. on September 15, 1996.

¶ 5 Appellant initially told investigators that he went hunting with two friends in Marble City on the morning of September 14th, 1996. He mentioned they drove by the Wilson's farm on the way home and said they took their guns back to one of his friend's houses. An OSBI agent spoke with Appellant's wife to verify Appellant's statement. After the agent spoke with her and relayed what he had learned to the other investigators, OSBI Agent Rosser asked Appellant to return to the police station to clear up a couple of things.

¶ 6 When Appellant re-entered the police department, he said something like "I think I can help you guys" or "I can help you clear this up." After being fully advised of his rights, Appellant confessed to shooting Jason

---

1. Childress was charged jointly with Floyd Leon Harlow and Dalton Lewis Hickman on Count 2; Harlow was charged alone in Count 3 with Accessory after the Fact—Murder First Degree; Harlow and Hickman were charged jointly in Count 4 with Second Degree (Felony) Murder with Larceny of a Domestic Animal serving as the underlying felony. Appellant's trial was severed from his co-defendants. (1–9–97 M.Tr. 6)

2. Appellant's Petition in Error was filed in this Court on April 15, 1998, and his amended Petition in Error was filed on August 10, 1998. Appellant's Brief was filed on January 22, 1999, and the State's Answer Brief was filed on May 24, 1999. Appellant's Reply Brief was filed June 14, 1999. The case was submitted to the Court on September 14, 1999. Oral argument was held November 23, 1999.

Wilson. His taped confession was played for the jury.[3]

¶ 7 At trial, Appellant testified that on September 14, 1996, around 8:00 a.m., he, Floyd Harlow and Dalton Hickman took a case and a half of beer and went squirrel hunting near Marble City. Sometime after noon, as they were driving home, Appellant commented that a steak would be nice.[4] He said he was driving. He stopped and got out of the truck. Dalton Hickman got out with him, and Appellant climbed the fence and walked into Jason Wilson's pasture. Once in the pasture, Appellant shot a calf in the forehead and tried to drag it to the fence. He slit the calf's throat. Hickman then climbed over the fence to assist with the calf.

¶ 8 Appellant testified Jason Wilson pulled up in his truck a few minutes later. Wilson yelled at them, and Appellant and Hickman took off running in opposite directions. Wilson chased Appellant.[5] When Appellant stopped running, he turned to Wilson and told him to stop and to let him go. Wilson asked Appellant why he killed the calf. Appellant told Wilson he needed to let him leave and Wilson told Appellant he was not going anywhere. Appellant testified Wilson started towards him, and Appellant again told him to stop. Wilson responded, "what are you going to do, shoot me?" Appellant then shot Jason Wilson in the head. After Wilson fell, Appellant said he "didn't want him to get back up so he could get a hold of" him

[Appellant], so he shot Wilson four or five more times in the back of the head.

¶ 9 Appellant, who was twenty-one years old at the time of the murder, is five feet two inches tall and weighs about one hundred twenty-five pounds. At trial, he testified he had suffered from hemophilia his whole life. As a result, he said he had to be careful about getting injured or cut because his blood does not clot.

¶ 10 Appellant testified he was afraid of Jason Wilson because he was so big and weighed a great deal more than him.[6] He said Wilson was screaming at him and threatening him.[7] He admitted he shot Wilson in the head and then fired at him another four or five times because he "was going to make sure that he couldn't get a hold of" him.

¶ 11 Phillip Murray, a licensed clinical psychologist, testified on Appellant's behalf. He administered several tests to Appellant and concluded Appellant was a dependent type person who showed a "very strong neurotic shock." He said Appellant was overcome with fear, probably related to his hemophilia. Dr. Murray testified that it appeared to him the first shot did "not appear to be anything other than a fear motivated response;" the additional shots were fired out of continuation of this initial fear. Dr. Murray concluded with his opinion that Appellant acted or

---

**3.** In the taped confession, Appellant stated that he, "Skeeter" Harlow and Dalton Hickman went squirrel hunting in Marble City on the morning of September 14th. They drank a case and a half of beer between 9:00 a.m. and that afternoon. On their way home, Appellant said he wanted to get out and shoot [his Marlin .22 rifle]. Appellant climbed over the fence and shot a calf in the forehead. Then, Appellant slit the calf's throat. About that time, Jason Wilson drove up, "jumped out of his truck and took off" after Appellant. Appellant ran, and Wilson ran after him, telling him to stop. After Appellant had run what seemed to him a long ways, he turned and faced Wilson. Wilson asked Appellant why he killed his cow and walked towards Appellant. Appellant "kept telling him to stop." Wilson responded, "why, what are you going to do, shoot me?" Appellant then shot Wilson in the forehead. After Wilson fell, he shot Wilson in the back of the head four or five times. Then Appellant ran away. He threw the rifle as far as he could— "between the truck and the telephone pole." Ap-

pellant's friends picked him up down the road. When he got home, he told his wife he had lost his gun in Marble City. In this statement, Appellant denied telling his friends what he had done and also said that neither of them were in the pasture with him.

**4.** Appellant denied making this statement in his taped confession.

**5.** At oral argument, appellate counsel argued the "chase" continued for about two hundred yards through the pasture.

**6.** The medical examiner's report shows Jason Wilson was seventy-six inches tall and weighed two hundred ninety-five pounds. (State's Exhibit 31)

**7.** During cross-examination, he testified Wilson said he was going to kick his ass and "was going to beat me to death."

"reacted" out of fear when he shot Jason Wilson.

¶ 12 On appeal, Appellant raised nineteen propositions of error. In his second proposition of error, Appellant claims the trial court committed reversible error by denying his requested instructions on second degree felony murder when the information alleged both malice murder in the first degree and larceny of a domestic animal and the homicide occurred in close proximity to the larceny.

¶ 13 Because we agree with Appellant that the trial court committed error when it refused his requested instructions on second degree felony murder, Appellant's conviction for first degree malice aforethought murder (Count 1) must be reversed and remanded for a new trial.

¶ 14 A trial court is required to instruct on all lesser included or lesser related offenses warranted by the evidence. *Shrum v. State,* 1999 OK CR 41, ¶ 10, 991 P.2d 1032, 1036; *Clayton v. State,* 1995 OK CR 3, ¶ 12, 892 P.2d 646, 653, *cert. denied,* 516 U.S. 846, 116 S.Ct. 137, 133 L.Ed.2d 84 (1995); *Boyd v. State,* 1992 OK CR 40, ¶ 9, 839 P.2d 1363, 1367, *cert. denied,* 509 U.S. 908, 113 S.Ct. 3005, 125 L.Ed.2d 697 (1993); *Fowler v. State,* 1989 OK CR 52, ¶ 29, 779 P.2d 580, 585, *cert. denied* 494 U.S. 1060, 110 S.Ct. 1537, 108 L.Ed.2d 775 (1990); *Lee v. State,* 1985 OK CR 62, ¶ 8, 700 P.2d 1017, 1019. A defendant is not entitled to an instruction on a lesser included or lessor related offense when the evidence presented will not reasonably support a conviction for the lesser offense. *Shrum,* 1999 OK CR 41, ¶ 10, 991 P.2d at 1036; *Duvall v. State,* 1991 OK CR 64, ¶ 9, 825 P.2d 621, 627, *cert. denied* 506 U.S. 878, 113 S.Ct. 224, 121 L.Ed.2d 161 (1992); *Hale v. State,* 1988 OK CR 24, ¶ 19, 750 P.2d 130, 136, *cert. denied* 488 U.S. 878, 109 S.Ct. 195, 102 L.Ed.2d 164 (1988); *Foster v. State,* 1986 OK CR 19, ¶ 30, 714 P.2d 1031, 1039, *cert. denied* 479 U.S. 873, 107 S.Ct. 249, 93 L.Ed.2d 173 (1986).

¶ 15 It is the duty of the trial court to determine as a matter of law whether the evidence is sufficient to justify the submission of instructions on a lesser offense to the jury. *Williams v. State,* 1991 OK CR 28, ¶ 14, 807 P.2d 271, 274–75; *James v. State,* 1987 OK CR 79, ¶ 12, 736 P.2d 541, 545, *cert. denied,* 484 U.S. 970, 108 S.Ct. 467, 98 L.Ed.2d 406 (1987).

¶ 16 Appellant maintains the only reason the State did not charge him with felony murder was because larceny of a domestic animal is not an enumerated felony supporting a conviction for first degree murder, and the death penalty is not a punishment available to the State for a conviction of second degree felony murder. Appellant observes the State had to utilize the larceny as evidence to support its sole aggravator—that the murder was committed for the purpose of avoiding arrest or prosecution. Therefore, before the jury could arrive at a death sentence in this case, it by necessity had to find Appellant unlawfully caused the death of Jason Wilson during the commission of the theft of Wilson's calf. *See* 21 O.S.1991, § 701.8(2).

¶ 17 Appellant also notes the State charged his co-defendants with second degree felony murder, with larceny of domestic animal as the underlying felony. He suggests these charges demonstrate the prosecutor's prejudice and support Appellant's claim that his request for instructions on second degree felony murder should have been given.

¶ 18 The decision regarding which criminal charge to bring lies within the wide parameters of prosecutorial discretion. *Romano v. State,* 1993 OK CR 8, ¶ 114, 847 P.2d 368, 393; *Gray v. State,* 1982 OK CR 137, ¶ 8, 650 P.2d 880, 882; *Dangerfield v. State,* 1987 OK CR 185, ¶ 3, 742 P.2d 573, 574. Prosecutorial discretion has boundaries. Prosecutions cannot be based upon "unjustifiable standards such as race, religion or other arbitrary classification." *Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978). It is the defendant's burden to show the State's prosecution of him is based upon discriminatory grounds. *See Carter v. State,* 1994 OK CR 49, ¶ 53, 879 P.2d 1234, 1251, *cert. denied,* 513 U.S. 1172, 115 S.Ct. 1149, 130 L.Ed.2d 1107 (1995).

¶ 19 Here, even if the prosecutor could have charged Appellant with second degree felony murder, Appellant cannot show

any discriminatory bases for the State's decision to charge him with a crime greater than his co-defendants. The record shows his culpability in the homicide was greater than either of the co-defendants. Appellant alone made the decision to kill Wilson after Wilson caught him dragging away the dead calf. The prosecutor was presented with enough evidence to justify his decision to charge Appellant with first degree malice murder.

¶ 20 The question here is not whether there was evidence sufficient to sustain the charge, but whether the trial court should have given Appellant's requested instructions on second degree felony murder. Relying heavily upon cases in which this Court has said an offense is a lesser included only "where the greater offense cannot be committed without necessarily committing the lesser," the State argues Appellant was not entitled to this requested instruction because second degree felony murder is not a lesser included offense of malice murder. In its Answer Brief, the State cited *Willingham v. State*, 1997 OK CR 62, ¶ 19, 947 P.2d 1074, 1080, *cert. denied*, 524 U.S. 930, 118 S.Ct. 2329, 141 L.Ed.2d 702 (1998), to support its position.

¶ 21 Recently, we referred to the analysis set forth in *Willingham* as the "strict statutory elements approach" and noted its inflexibility. *See Shrum*, 1999 OK CR 41, ¶ 7, 991 P.2d at 1035. In *Shrum*, we also recognized another line of cases where lesser offenses are necessarily included where the lesser and the greater offense are in the same class of offenses and are closely or inherently related, but the elements do not satisfy the strict statutory elements test. *Id.* at 1999 OK CR 41, ¶ 8, 991 P.2d at 1035.

¶ 22 Recognizing that trial courts in Oklahoma have not been consistent in their determinations about when to give lesser included instructions, this Court took the opportunity in *Shrum* to resolve the inconsistencies and to aid the trial court in determining if or what instructions on lesser offenses should be given. This Court formally adopted the "evidence test" to be utilized by trial courts in determining whether lesser included instructions should be given. "This means ... that all lesser forms of homicide are necessarily included and instructions on lesser forms of homicide should be administered if they are supported by the evidence." *Id.*, 1999 OK CR 41, ¶ 10, 991 P.2d at 1036. In *Shrum*, we specified our holding was "prospective only and will be applied only to those cases now pending on appeal...." *Id.*

¶ 23 This Court directed the parties to argue this proposition of error at oral argument in light of *Shrum*. Prior to the argument, both parties filed motions to file supplemental authorities on the propositions to be argued. In its Motion to File Supplemental Brief and Attached Supplemental Brief of Appellee, the State conceded "that sufficient evidence was presented at trial to support an instruction on second degree felony murder" if *Shrum* is applied retroactively. At oral argument, the State argued the retroactive application of *Shrum* to this case and to other similarly situated defendants whose cases are pending on appeal would be "unjust" and would negatively impact the administration of justice. The State also argued *Shrum* should be overruled.

¶ 24 State courts generally have the authority to determine the retroactivity of their own decisions. *Cooper v. State*, 1995 OK CR 2, ¶ 57, 889 P.2d 293, 308; *Rivers v. State*, 1994 OK CR 82, ¶ 17, 889 P.2d 288, 291. We hereby decline the State's request that we overrule our decision to apply *Shrum* to cases currently pending on appeal.

¶ 25 While the elements of second degree felony murder are clearly not contained within the elements of first degree malice murder [8] under the test formerly utilized by this Court, *see e.g. Willingham*, 1997 OK CR 62, ¶¶ 19–20, 947 P.2d at 1080, without question,

---

8. The elements of first degree malice murder are: (i) unlawful; (ii) death of a human; (iii) caused by another; (iv) with malice aforethought. OUJI–CR 2d. 4–61; 21 O.S.Supp.1995, § 701.7(A). The elements of second degree felony murder are: (i) death of a human; (ii) occurring as a result of an act or event which happened in the commission of a felony; (iii) caused by the defendant; (iv) the elements of the felony the defendant is alleged to have been in commission of are as follows: [give elements of underlying felony—in this case the elements of larceny of domestic animal]. OUJI–CR 2d. 4–92; 21 O.S.1991, § 701.8(2).

some evidence was presented in this case which justified and warranted giving Appellant's requested instruction on second degree felony murder. The State charged Appellant separately with malice murder (Count 1) and larceny of a domestic animal (Count 2). The way the Information was drafted, the two crimes were inherently related and Appellant was on notice that he could be convicted of second degree felony murder. *Compare Stiles v. State*, 1992 OK CR 23, ¶ 28, 829 P.2d 984, 991 (homicide occurred while appellant was fleeing scene of robbery; the evidence showed the robbery and homicide were part of one continuous transaction and this is proper test to determine whether the two are causally related). The fact that the State charged the co-defendants with second degree felony murder based upon the same underlying felony further supports Appellant's claim. Lastly, we cannot ignore the jury's question regarding the applicability of second degree murder.[9] Finally, the State concedes that sufficient evidence was presented at trial to support an instruction on second degree felony murder. *See* Supplemental Brief of Appellee filed Nov. 17, 1999, at page 3.

¶ 26 Accordingly, we find the failure of the trial court to give Appellant's requested instructions on the lesser related offense of second degree felony murder, which was supported by the evidence, constitutes reversible error and this case should be, and hereby is, remanded for a new trial. *Shrum*, 1999 OK CR 41, ¶ 10, 991 P.2d at 1036; *Valdez v. State*, 1995 OK CR 18, ¶ 52, 900 P.2d 363, 378, *cert. denied*, 516 U.S. 967, 116 S.Ct. 425, 133 L.Ed.2d 341; *O'Bryan v. State*, 1994 OK CR 28, ¶ 7, 876 P.2d 688, 689. It is sad that this Court must reverse this case but it is better that an accused receive a fair trial, and the jury receive proper instruc-

tions than not provide justice. When this case is retried, the jury will have the full range of verdicts to give.

¶ 27 Because reversal is required on Proposition Two, we need not address the merits of the claims raised in Propositions One, Three, Four, Five, Six, Eight, Ten, Eleven, Fifteen, and Eighteen which relate solely to the murder conviction.[10] The remaining propositions will be addressed as they relate to Appellant's conviction for Count 2—Larceny of a Domestic Animal.

¶ 28 Appellant claims, in Proposition Seven, that improper tactics and remarks of the prosecutor deprived him of a fair trial and a reliable sentencing proceeding. Those comments which were not objected to will be reviewed for plain error only. Both parties have wide latitude in closing arguments to discuss the evidence and to make reasonable inferences. This Court will grant relief only where grossly improper and unwarranted argument affects the defendant's rights. *See e.g., Spears v. State*, 1995 OK CR 36, ¶ 60, 900 P.2d 431, 445, *cert. denied*, 516 U.S. 1031, 116 S.Ct. 678, 133 L.Ed.2d 527 (1995). As to those comments which were not objected to, we find no plain error occurred.

¶ 29 Appellant objected to the prosecutor's comments that Appellant lied about his reason for going into Wilson's pasture and to the prosecutor's implication that Appellant was involved in a "plan" to kill Wilson's calf. We find these comments were reasonable comments on the evidence and do not constitute error. *Allen v. State*, 1987 OK CR 45, ¶ 16, 734 P.2d 1304, 1308.

¶ 30 Appellant also contends the prosecutor unnecessarily ridiculed him by calling him a liar, comparing him to a cor-

---

9. The jury sent a note during first stage deliberations which had two questions: (1) need a copy of instructions, and (2) *is there any consideration for manslaughter/2nd degree water (sic)*. (emphasis added). (O.R.II 269)

10. However, on retrial of Count 1, we advise the trial court to use caution in the admission of victim impact evidence. "[V]ictim impact evidence should be restricted to those unique characteristics which define the individual who has died, the contemporaneous and prospective cir-

cumstances surrounding that death, and how those circumstances have financially, emotionally, psychologically, and physically impacted on members of the victim's immediate family." *Cargle v. State*, 1995 OK CR 77, ¶ 75, 909 P.2d 806, 828, *cert. denied*, 519 U.S. 831, 117 S.Ct. 100, 136 L.Ed.2d 54 (1996); *see also Welch v. State*, 1998 OK CR 54, ¶ 23, 968 P.2d 1231, 1242; *Conover v. State*, 1997 OK CR 6, ¶ 65, 933 P.2d 904, 920–921.

nered rat, and by characterizing him as "the worst of the worst." These characterizations were not met with contemporaneous objections and we find no plain error occurred. However, we take this opportunity to reiterate that we do not condone such borderline argument. *See Hammon v. State,* 1995 OK CR 33, ¶ 90, 898 P.2d 1287, 1306–1307.

 ¶ 31 Even though some of the comments may have been objectionable, we cannot say the combined effect of the improper arguments was so prejudicial as to adversely affect the fundamental fairness of Appellant's trial. *Ochoa v. State,* 1998 OK CR 41, ¶ 55, 963 P.2d 583, 601, *cert. denied,* 526 U.S. 1023, 119 S.Ct. 1263, 143 L.Ed.2d 358 (1999). Further, as reversal is required on Proposition Two, we will not review the complained of comments which occurred during the second stage of trial relating to Count 1. Proposition seven is therefore denied.

 ¶ 32 In Proposition Ten, Appellant claims the State's failure to provide a complete record of the proceedings constitutes a violation of Appellant's constitutional rights and requires reversal of his convictions, or at a minimum vacation of the death sentence. His complaint goes to several off-the-record discussions had with prospective jurors during voir dire, and several alleged *ex parte* communications between the trial judge and potential jurors.[11] Defense counsel did not object to any of these bench conferences or communications, nor did defense counsel object to the excusal of the three prospective jurors. Further, Appellant does not allege any error arising from a ruling made by the trial court after any of the discussions or conferences.

 ¶ 33 While the better practice in a capital case is the transcription of the entire proceeding, including any and all bench conferences or proceedings had in chambers, we are unable to conclude that any error has occurred in the present case which requires relief from this Court. Appellant has failed to demonstrate any reason for reversal of his conviction on this ground.[12] See Parker v. State, 1994 OK CR 56, ¶¶ 25–27, 887 P.2d 290, 294–295. Accordingly, this claim of error is denied.

 ¶ 34 In Proposition Twelve, Appellant claims the denial of his motion for a change of venue forced him to be tried in a court and community pervaded by hostile pretrial publicity and deprived him of his federal and state constitutional rights to a fair trial. It is the defendant's burden to show he has been so prejudiced by pretrial publicity that he did not receive a fair trial. The relevant inquiry on appeal is whether the accused received a fair trial from jurors who could lay aside any personal opinions and base their verdict on the evidence. *Hain v. State,* 1996 OK CR 26, ¶ 8, 919 P.2d 1130, 1136, *cert. denied,* 519 U.S. 1031, 117 S.Ct. 588, 136 L.Ed.2d 517 (1996); *Shultz v. State,* 1991 OK CR 57, ¶ 22, 811 P.2d 1322, 1329.

---

11. Appellant first objects to the record concerning prospective juror Covington. Covington indicated she did not feel she could impartially serve because her brother had been recently killed in an auto accident. A related bench conference was not recorded and an in-chambers conference relating thereto was not recorded. When court reconvened, Covington was excused.

Appellant's second complaint goes to the State's peremptory removal of prospective juror Hooks. Prior to exercising its peremptory, the State approached the bench and the conversation was not recorded. After the conversation, Hooks was removed.

Appellant's third complaint concerns the removal of prospective juror Jenkins. Three off the record bench conferences occurred prior to the trial court's removal of this juror for cause.

Appellant also suggests the trial court had *ex parte* communications with two jurors before re-

moving them for cause. In one instance, the prospective juror apparently phoned the judge to say she was ill; in the second instance, the judge apparently received and read a letter from another juror's employer resulting in the excusal of that juror because of hardship resulting from her employment. The record shows defense counsel did not object to the removal of this particular juror for cause on the basis of hardship. (Tr.I 163)

12. We find this case is distinguishable from *Van White v. State,* 1988 OK CR 47, ¶ 17, 752 P.2d 814, 821, where we reversed the first degree capital murder conviction because no part of *voir dire* was stenographically recorded and this Court was unable to conduct its mandatory sentence review.

¶ 35 While the granting or denial of a change of venue is left to the sound discretion of the trial court, that discretion is limited by the due process rights of the defendant. *See Coates v. State,* 1989 OK CR 16, ¶¶ 15–16, 773 P.2d 1281, 1286–1287. Change of venue is proper when the influence of the news media, either in the community at large or in the courtroom itself pervade the proceedings, or when the entire circumstances surrounding the trial indicate the trial was fundamentally unfair. *See Murphy v. Florida,* 421 U.S. 794, 798–99, 95 S.Ct. 2031, 2035–36, 44 L.Ed.2d 589 (1975)(pervades the proceedings); *Allen v. State,* 1993 OK CR 49, ¶ 7, 862 P.2d 487, 490, *cert. denied,* 511 U.S. 1075, 114 S.Ct. 1657, 128 L.Ed.2d 375 (1994)(fundamentally unfair).

¶ 36 Turning to the circumstances of this case, we note the affidavits filed by Appellant in support of his Motion for Change of Venue and the Motion to Reconsider may have been sufficient to satisfy the requirements of 22 O.S.1991, § 561. However, the affidavits do not establish by clear and convincing evidence that the minds of the inhabitants of the county were so prejudiced that a fair trial could not be had in Sequoyah County. In fact, while there were numerous newspaper articles published between the date of the offense and the day of trial, we do not find Appellant has established the influence of the news media in the community at large or in the courtroom so pervaded the proceedings that Appellant could not receive a fair trial. The Appellant has the burden to show that he could not get a fair trial, this Appellant did not do.

¶ 37 Review of the transcription of voir dire shows that forty-eight prospective jurors were called. Of the eighteen who were excused for cause, none were excused because of exposure to pretrial publicity. Further, while a number of the twelve jurors seated had read or heard something about the case initially, each juror indicated that he or she could be fair and impartial and base his or her decision on the evidence presented at trial.

¶ 38 A qualified juror need not be totally ignorant of the facts and issues involved. *Bear v. State,* 1988 OK CR 181, ¶ 7, 762 P.2d 950, 954; *Harvell v. State,* 1987 OK CR 177, ¶ 14, 742 P.2d 1138, 1141. "A fair jury does not necessarily require totally uninformed jurors." *Brecheen v. State,* 1992 OK CR 42, ¶ 11, 835 P.2d 117, 120, *cert. denied,* 506 U.S. 1085, 113 S.Ct. 1063, 122 L.Ed.2d 368 (1993). It is enough that the jurors can set aside their impressions or opinions and render a verdict based on the evidence presented in court. *Harvell,* 1987 OK CR 177, ¶ 14, 742 P.2d at 1141. The record of voir dire shows that a fair jury was selected and Appellant has failed to show by clear and convincing evidence that the selection process was tainted by media coverage. Therefore, the trial court did not abuse its discretion in denying the Motion for a Change of Venue. Proposition Twelve is denied.

¶ 39 In Proposition Thirteen, Childress argues his federal and state constitutional rights were violated when the trial court refused to conduct individual voir dire. Appellant recognizes there is no absolute right to sequestered, individualized voir dire. However, under the facts of this case, due to the extensive publicity, he contends individualized voir dire was warranted.

¶ 40 This Court has held individualized voir dire may be allowed at the discretion of the trial court. *McCarty v. State,* 1995 OK CR 48, ¶ 5, 904 P.2d 110, 115, *citing Cannon v. State,* 1992 OK CR 14, 827 P.2d 1339, 1341, *cert. denied,* 516 U.S. 1176, 116 S.Ct. 1272, 134 L.Ed.2d 219 (1996). However, "[t]he existence of extensive pretrial news coverage does not itself demand individual or sequestered voir dire. The crux of the issue is whether defendant can receive fair and impartial jurors." *Vowell v. State,* 1986 OK CR 172, ¶ 15, 728 P.2d 854, 858 (citations omitted).

¶ 41 Because of the obvious difficulty in reviewing juror candidness, we must rely and place great weight upon the trial court's opinion of the jurors. *Hain v. State,* 1996 OK CR 26, ¶ 28, 919 P.2d 1130, 1139, *cert. denied,* 519 U.S. 1031, 117 S.Ct. 588, 136 L.Ed.2d 517 (1996). Here, the trial court, who saw the prospective jurors and heard

their responses firsthand, found no need to conduct individual voir dire. Because there is no evidence Appellant was prejudiced by the trial court's decision to deny his requests for individualized voir dire of any potential juror, we find the trial court did not abuse its discretion.[13] *Douglas v. State,* 1997 OK CR 79, ¶¶ 15–16, 951 P.2d 651, 661, *cert. denied,* 525 U.S. 884, 119 S.Ct. 195, 142 L.Ed.2d 159 (1998).

¶ 42 In Proposition Fourteen, Appellant argues the trial court denied him of a fair trial and impartial jury when it refused to sustain Appellant's challenges for cause against prospective jurors Treat and Stumbaugh and when it wrongfully removed prospective jurors who opposed the death penalty.

¶ 43 We find that any objection to the trial court's refusal to remove prospective juror Stumbaugh for cause is waived, because defense counsel did not renew his challenge for cause prior to passing the jury. *See Johnson v. State,* 1996 OK CR 36, ¶ 9, 928 P.2d 309, 314, *cert. denied,* 522 U.S. 832, 118 S.Ct. 99, 139 L.Ed.2d 54 (1997).

¶ 44 Defense counsel challenged prospective juror Treat for cause based upon his statements that he attended the same church as the deceased and had read articles about the murder in the newspaper, and based upon his responses which counsel believed indicated Treat could not be fair and impartial. The challenge was denied. Upon further questioning, Treat said he did not know the deceased well and had not seen the deceased for "seven or eight" years; he affirmatively stated he could give Mr. Childress a fair trial and could put aside anything he had heard about the case.[14] Under these circumstances, we find the trial court did not abuse its discretion in refusing to remove prospective juror Treat for cause. *Humphreys v. State,* 1997 OK CR 59, ¶ 6, 947 P.2d 565, 570,

*cert. denied,* 524 U.S. 930, 118 S.Ct. 2329, 141 L.Ed.2d 702 (1998).

¶ 45 Appellant also objects to the removal for cause of three other prospective jurors (Fogg, Jenkins, and Gates) and complains about the trial court's failure to utilize specific death qualifying questions set forth at OUJI–CR 2d. 1–5(12)(Alternate 2). We find no plain error occurred when the trial court removed these jurors for cause as their answers reflect their inability to perform their duties as jurors. *See Miller v. State,* 1998 OK CR 59, ¶¶ 21–23, 977 P.2d 1099, 1106, *cert. denied,* —— U.S. ——, 120 S.Ct. 228, 145 L.Ed.2d 192 (1999). The remainder of the argument need not be addressed because we are reversing the conviction which resulted in a sentence of death. Accordingly, Proposition Fourteen is denied.

¶ 46 In Appellant's sixteenth proposition of error, he argues he received ineffective assistance of counsel because (1) his counsel failed to present available evidence of community outrage and bias which would have "greatly enhanced" his motion for change of venue and (2) his counsel failed to preserve errors for appellate review. Appellant filed an Application for Evidentiary Hearing contemporaneously with the filing of his brief in chief in support of this proposition. *See* Rule 3.11(B)(3)(b), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (1998).

¶ 47 Analysis of this claim begins with the presumption that trial counsel was competent and the burden is on the accused to demonstrate both a deficient performance and resulting prejudice. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). *Strickland* sets forth a two-part test which must be applied to determine whether a defendant has been denied effective assistance of counsel. First, the defendant must show that counsel's performance was deficient; and second, he must

---

13. Prospective Juror Treat stated he did not know the deceased well and had not seen the deceased for "seven or eight" years. He affirmatively stated he could give Mr. Childress a fair trial could put aside anything he had heard about the case. (Tr.I 154) Upon further questioning, Ms. Stumbaugh stated that she signed a petition, brought to her by the deceased's aunt, which

dealt with victims' rights. (Tr.I 159) Defense counsel did not renew his challenge to her for cause prior to passing the jury. (Tr.I 160)

14. Mr. Treat was subsequently removed with Appellant's first peremptory challenge. (Tr.I 177)

show the deficient performance prejudiced the defense. Unless the defendant makes both showings, "it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687, 104 S.Ct. at 2064. Appellant must demonstrate that counsel's representation was unreasonable under prevailing professional norms and that the challenged action could not be considered sound trial strategy. *Id.* at 688–89, 104 S.Ct. at 2065–66.

■ ¶ 48 When a claim of ineffectiveness of counsel can be disposed of on the ground of lack of prejudice, that course should be followed. *Id.* at 697, 104 S.Ct. at 2069. Concerning the prejudice prong, the Supreme Court, interpreting *Strickland,* has held:

> [an appellant] alleging prejudice must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S., at 687, 104 S.Ct., at 2064; *see also Kimmelman v. Morrison,* 477 U.S. 365, 374, 106 S.Ct. 2574, 2582, 91 L.Ed.2d 305 (1986) ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect"); *Nix v. Whiteside,* 475 U.S. [157], at 175, 106 S.Ct. [988], at 998 [, 89 L.Ed.2d 123 (1986) ]. Thus, an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective. To set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him. *See [United States v.] Cronic,* 466 U.S. [648], at 658, 104 S.Ct. [2039], at 2046 [80 L.Ed.2d 657 (1984) ].

*Lockhart v. Fretwell,* 506 U.S. 364, 369–70, 113 S.Ct. 838, 842–43, 122 L.Ed.2d 180, 189 (1993)(footnote omitted). Although we must consider the totality of the evidence which was before the factfinder, the ultimate focus of our inquiry "must be on the fundamental fairness of the proceeding whose result is being challenged." *Strickland,* 466 U.S. at 696, 104 S.Ct. at 2069.

■ ¶ 49 The first part of Appellant's claim goes to his trial counsel's alleged failure to adequately investigate and present evidence on behalf of his Motion for Change of Venue and his Motion to Reconsider Change of Venue. We have already determined that the trial court did not abuse its discretion when it denied Appellant's Motion for Change of Venue. *See* Proposition 12. Appellant has not shown how, if trial counsel had utilized all of the information presented on appeal, it would have affected the trial court's determination not to grant the change of venue. Under these circumstances, Appellant cannot show prejudice from his trial counsel's alleged "failure," and we need not inquire into this allegation further. *Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069. The Application for Evidentiary Hearing is accordingly **DENIED**.

■ ¶ 50 The second part of Appellant's claim of ineffective assistance of trial counsel goes to counsel's (1) failure to state on the record the names of the jurors who remained as a result of peremptory challenges being expended upon prospective jurors Treat and Stumbaugh, (2) failure to object to jury instructions Nos. 23 and 24 (instructions on the right of a trespasser to defense of self-defense), and (3) failure to object to improper prosecutorial comments. We have reviewed these claims as they relate to Appellant's conviction on Count 2 and find counsel was not ineffective under *Strickland.*

¶ 51 In Proposition Seventeen, Appellant submits that extraneous evidence, not admitted at trial, was injected into the jury deliberations and denied him of his constitutional rights to a fair trial and impartial jury. Simultaneously with the filing of his brief on appeal, Appellant's counsel filed a Notice of Extraneous Information Considered by the Jury and Application for Evidentiary Hearing Thereon (hereafter "Notice"). Therein, Appellant contends two types of "extraneous" information was received by the jury: (1) statements from the jury foreman about an experiment he conducted during an overnight recess which "tested" a portion of the defendant's testimony presented at trial, and (2)

the opinions of some jurors as to the legal ramifications of failing to arrive at a unanimous verdict on the issue of punishment.

¶ 52 We find the second part of this argument is rendered moot by our decision to reverse and remand Count 1 for a new trial. As to the allegation that the jury foreman's experiment may have influenced the minds of certain jurors as it related to Appellant's guilt, we find the utilization of such evidence, if it was utilized, was harmless beyond a reasonable doubt. The evidence at trial showed beyond a reasonable doubt that Appellant slaughtered Jason Wilson's calf and Appellant does not complain the receipt of any improper evidence affected the jury's finding of guilt on Count 2. *Simpson v. State,* 1994 OK CR 40, ¶ 36, 876 P.2d 690, 702. Accordingly, it is not necessary to remand this matter for an evidentiary hearing on this issue to determine its affect on the outcome of the trial. This proposition is denied.

¶ 53 Having fully reviewed the record before us, we hereby affirm Appellant's conviction for Larceny of a Domestic Animal (Count 2). Upon retrial of Count 1, should Appellant be convicted of the lesser related offense of second degree felony murder, the trial court should abrogate the conviction for Larceny of a Domestic Animal. *See Lambert v. State,* 1999 OK CR 17, ¶¶ 13–18, 984 P.2d 221, 228–229.

### Conclusion

¶ 54 Appellant's conviction for First Degree Malice Aforethought Murder is **REVERSED AND REMANDED FOR A NEW TRIAL.** Appellant's conviction for Larceny of Domestic Animal (Count 2) is hereby **AFFIRMED.**

STRUBHAR, P.J., CHAPEL, J., and LILE, J., concur.

LUMPKIN, V.P.J., concurs in results.

LUMPKIN, Vice–Presiding Judge: concurs in results.

¶ 1 I continue to view the issue of instructions on lesser included offenses as set out in my separate writing in *Shrum v. State,* 1999 OK CR 41, 991 P.2d 1032 (Lumpkin, J.: Concur in Results). However, based on *stare decisis,* I concur in the results reached by the Court in this case. The State concedes that sufficient evidence was presented to support an instruction on second degree felony murder under *Shrum.* But, it must be noted the opinion misstates the criteria for the lesser included offense instruction as "some evidence" at page 11, rather than the standard of "sufficient evidence" as set out in *Shrum. See also, Jackson v. State,* 1998 OK CR 39, ¶ 8–15, 964 P.2d 875, 900–902 (Lumpkin, J., concurring in results). This use of the term "some evidence" on page 11 is also inconsistent with the opinion's statement at page 7. The test is "whether the evidence is sufficient to justify the submission of instructions on a lesser included offense to the jury."

¶ 2 In addition, I continue to adhere to the analysis I set out in *Lambert v. State,* 1999 OK CR 17, ¶ 3, 984 P.2d 221, 244–45 (Lumpkin, V.P.J., concurring in results) regarding the authority of the District Court to abrogate a conviction made final by this Court.